HERBERT LORD *vs.* REGISTRAR OF MOTOR VEHICLES.

Middlesex.  May 4, 1964. — June 8, 1964.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Public Record.  Motor Vehicle,* Report of accident.  *Registry of Motor Vehicles.*

A motor vehicle accident "report in writing to the registrar on a form approved by him" and filed with him as required by G. L. c. 90, § 26, is a public record under c. 4, § 7, twenty-sixth, open to inspection by any person pursuant to c. 66, § 10.

PETITION for a writ of mandamus filed in the Superior Court on July 3, 1963.

The case was heard by *Chmielinski,* J., on demurrer.

*Herbert Lord,* pro se.

*Nelson I. Crowther, Jr.,* Assistant Attorney General, for the respondent.

CUTTER, J.  The trial judge sustained the registrar's demurrer to a petition for a writ of mandamus to compel the registrar to allow the petitioner to inspect a report of a motor vehicle collision made by the driver of one of the automobiles.  It was alleged that the collision involved property damage of more than $200; that the petitioner, one of the drivers involved in the collision, had made his report to the registrar under G. L. c. 90, § 26; that the registrar had been requested to permit the petitioner to inspect the other driver's report, and that one Capasso, chief accountant in charge of the registrar's files, had refused to allow such inspection.  Attached to the petition is a copy of the registrar's prescribed form for such a report.  The petitioner appealed.

General Laws c. 90, § 26 (as amended through St. 1956, c. 225), reads, "Every person operating a motor vehicle which is in any manner involved in an accident in which any person is killed or injured therein, or in which there is dam-

age in excess of two hundred dollars to any one vehicle or other property, shall forthwith report in writing to the registrar on a form approved by him. The registrar may revoke or suspend the license of any person violating this section."[1] The question for decision is whether a report filed under § 26 is a public record under G. L. c. 4, § 7, Twenty-sixth,[2] and therefore open to inspection by reason of G. L. c. 66, § 10 (as amended through St. 1948, c. 550, § 5).[3]

In 1922, the then Attorney General expressed the opinion (6 Op. Atty. Gen. p. 548) that a report under § 26, as it then read, was not open to public inspection under c. 66, § 10. He relied upon *Round* v. *Police Commr. for the City of Boston,* 197 Mass. 218, 220–221, which held that weekly reports of pawnbrokers to the licensing board were not public records, under a statute which this court regarded as requiring (p. 220) the reports "for the . . . use of the licensing board, and not to be placed on file for the information of the public." In *Gerry* v. *Worcester Consol. St. Ry.* 248 Mass. 559, 567, a similar result was reached with respect to reports of accidents to the Industrial Accident Board, made under G. L. c. 152, § 19 (prior to its amendment by St. 1935,

---

[1] See also G. L. c. 90, § 27 (as amended through St. 1953, c. 570, § 3), which reads in part, "A full record shall be kept by every court of every case in which a person is charged with a violation of any statute . . . relating to the operation . . . of motor vehicles . . . and an abstract of such record shall be sent forthwith by the court to the registrar. Said abstracts shall be made upon forms prepared by the registrar, and shall include all necessary information as to the parties to the case, the nature of the offence, the date of the hearing, the plea, the judgment and the result . . . . *The registrar shall keep such records in his main office, and they shall be open to the inspection of any person during reasonable business hours . . .*" (emphasis supplied). The next to the last amendment of § 26 was by St. 1953, c. 570, § 2. Prior to the amendment of §§ 26 and 27 by c. 570, the two sections seem to have had a separate history.

[2] Clause Twenty-sixth (as appearing in St. 1962, c. 427, § 1) reads in part, " 'Public records' shall mean any written or printed book or paper . . . of the commonwealth . . . which is the property thereof, and in or on which any entry has been made or is required to be made by law, or which any officer or employee of the commonwealth . . . has received or is required to receive for filing . . . ."

[3] Section 10 reads in part, "Every person having custody of any public records shall, at reasonable times, permit them to be inspected . . . by any person, under his supervision, and shall furnish copies thereof on payment of a reasonable fee. . . ."

c. 339, and later amendments). Section 19 contained a provision that copies of such reports "and statistics and data compiled therefrom shall be kept available by . . . [the division of industrial accidents] and shall be furnished on request to the department of labor and industries for its own use." The court pointed out (p. 567) the absence of any "provision . . . giving the right to the public to inspect the reports," and held that the reports were required "for the purpose of aiding . . . [the Industrial Accident B]oard in its administrative duties" and were not public records.

Doubtless, reports under c. 90, § 26, are useful in the administration of the registry and assist in the compilation of statistics (see *Brest* v. *Commissioner of Ins.* 270 Mass. 7, 17), but we see nothing in § 26 limiting the use of the reports to these purposes. Reports under § 26 conceivably also would have usefulness to the general public (see *Stowe* v. *Mason,* 289 Mass. 577, 582; *Ryan* v. *DiPaolo,* 313 Mass. 492, 493–494) as well as to the registrar's office.

Section 26 requires a "report in writing to the registrar on a form approved by him." This in effect is a requirement that the reports be received by the registrar, presumably to be retained at least as statistical information. Although the Legislature has not said affirmatively that these reports must be kept in the files, it must have been intended that they be preserved by the registrar at least long enough to enable the reporting driver to establish, at all relevant times, that he has complied with § 26, so that his operator's license will not be revoked for noncompliance with the section. Although § 26 might well have been more explicit in this respect, we construe § 26 as requiring the registrar to receive the reports for filing.

In *Direct-Mail Serv. Inc.* v. *Registrar of Motor Vehicles,* 296 Mass. 353, 355–357, this court considered the right of the public to inspect the registrar's records of motor vehicle registrations. Reference was there made to G. L. c. 90, §§ 2 and 30,[4] as prescribing the keeping of these registration

---

[4] Section 30 (as amended through St. 1956, c. 351) reads in part, "A proper record of all applications and of all certificates and licenses issued shall be kept by the registrar at his main office, and such records shall be open to the

records. In *Finnegan* v. *Checker Taxi Co.* 300 Mass. 62, 70–71, this court held that registry "papers containing the operating record" of the operator of a vehicle involved in an accident were not admissible in evidence "on the matter of the operator's unfitness." In discussing the records of the suspension and reissue of that operator's license, the court said (p. 70), "The statute requires that the registrar shall keep certain specified records." It then referred to c. 90, §§ 2, 30, and 34I. A similar statement was made in *Canney* v. *Carrier*, 333 Mass. 382, 383, with reference to a letter to the registrar from a plaintiff in a tort action concerning the ownership of a motor vehicle, "received back" with certain interlined notations. The opinion said, "The letter with the interlineations obviously was not among the records which the registrar is required by statute to keep," referring to §§ 2, 30, and 34I.

We think that these decisions are not conclusive of this case where reports under § 26 are viewed as public records, not because any entry upon them is required to be made by law (see c. 4, § 7, Twenty-sixth, fn. 2) but because they are reports which the registrar "is required to receive for filing." There is, of course, no specific provision in § 26 that these reports shall be open to inspection. Compare the provision found in § 27 (see fn. 1). The omission of such a provision from § 26, and also the omission from § 30 (see fn. 4) of such a provision made clearly applicable to reports under § 26, do not seem to us of controlling significance in the absence of indication that the inclusion of the explicit language in § 27, and the omission of such language from § 26 and from § 30 with reference to reports under § 26, was more than an inadvertence.

inspection of any person . . . . The registrar may issue a certified copy . . . of any certificate of registration or of any license to operate . . . which may have been lost . . . . Certified copies of such records . . . shall be admissible as evidence in any court . . . to prove the facts contained therein. The registrar may destroy applications . . . and copies of the licenses and certificates of registration issued by him, and all letters reporting accidents or papers relating thereto, excepting those of the then current year and the year next preceding. He may destroy or dispose of any obsolete number plates and forms . . . and may destroy examination papers or the answers given by the applicants for licenses when the same have become of no value . . . . He may also destroy all records of convictions of persons . . . [with an exception not relevant] excepting those of the then current year and the two years next preceding."

It is argued that to treat these reports as public records may result in inconvenience and expense in the registrar's office. If this proves to be the case, the Legislature has power to grant relief, as, for example, by providing for destruction of the reports after a stated period of time, or by limiting their availability for inspection. Indeed, it would appear that the Legislature has already done so to some extent in connection with the documents referred to in § 30 (see fn. 4).

The conclusion which we reach is supported by considerations of public policy and by the circumstance that the report required by § 26 would have limited usefulness if not open to public inspection. Such a report frequently might be important to the persons concerned in an accident in investigations and preparation for litigation. There are substantial reasons for making these reports available to all such persons and to public authorities on a nondiscriminatory basis. If the Legislature had intended a contrary result, we would expect to find in § 26 an explicit provision to that effect.

In the opinion of a majority of the court, a case under G. L. c. 66, § 10, as amended, for relief by mandamus was stated in the petition. The order sustaining the demurrer must be reversed.

*So ordered.*