GLOBE NEWSPAPER COMPANY & others[1] vs. BOSTON
RETIREMENT BOARD
(and two companion cases[2]).

Suffolk. November 4, 1982. — March 14, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Public Record. Statute,* Construction. *Privacy. Public Employment,*
Retirement. *Words,* "Proceedings."

Certain medical files and personnel information, access to which was
sought by a newspaper and a reporter from records maintained by the
Boston Retirement Board, were exempt from mandatory disclosure as
public records by the provisions of G. L. c. 4, § 7, Twenty-sixth (*c*),
where the files or information sought were of a personal nature and
related to particular individuals. [430-438]

A medical certificate issued pursuant to G. L. c. 32, §§ 6 (3) (*a*) and 7 (1),
by a medical panel to the Boston Retirement Board describing the
disability from which a pension applicant suffered was not a public
record as that term was defined prior to July 1, 1974, the effective date
of St. 1973, c. 1050, § 6, providing that exemptions from public
disclosure shall not be construed to exempt from the definition of
public records any record which was a public record on that date,
where the certificate was intended to aid the board in the administra-
tion of its duties, and where the board was not required by c. 32, § 20
(5) (*a*), to keep a record of the certificate as part of its proceedings and,
consequently, the certificate was not subject to mandatory disclosure.
[439-442]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on February 14, 1979, February 26, 1979, and Febru-
ary 27, 1979, respectively.

[1] They are Stephen A. Kurkjian and the Attorney General, who inter-
vened as a plaintiff.

[2] Boston Firefighters, Local 718, International Association of Firefight-
ers, AFL-CIO & others *vs.* Boston Retirement Board & others. Boston
Police Patrolmen's Association, Incorporated *vs.* Boston Retirement
Board & others.

After consolidation of the cases, a motion for summary judgment was heard by *Doyle*, J., a District Court judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*James F. McHugh (Jeanie M. Duncan* with him) for Globe Newspaper Company & another.

*Stephen M. Limon*, Assistant Attorney General, for the Attorney General.

*Robert J. Muldoon, Jr. (Devra G. Bailin* with him) for Boston Firefighters, Local 718, International Association of Firefighters, AFL-CIO.

*Thomas R. Paxman (Philip P. Rossetti* with him) for Boston Retirement Board.

*Frank J. McGee*, for Boston Police Patrolmen's Association, Incorporated, submitted a brief.

LIACOS, J. The Globe Newspaper Company and its reporter Stephen A. Kurkjian (Globe) commenced this action in the Superior Court seeking to obtain access to certain records held by the Boston retirement board and its members (Board), pertaining to disability pensions. After the Globe's action was consolidated with the actions discussed below, a judge of the Superior Court enjoined the Board from complying with an order issued by the Supervisor of Public Records of the Commonwealth (Supervisor) to disclose cursory statements of the medical reasons relied on to grant disability pensions to former employees of the city of Boston.

The procedural history may be summarized as follows. After the Globe filed its action, the Boston Firefighters, Local 718, International Association of Firefighters, AFL-CIO (Firefighters), and the Boston Police Patrolmen's Association, Incorporated (Patrolmen), filed separate actions against the Board, the Globe, and others seeking to restrain the disclosure of the medical statements.

A restraining order barring the release of the statements in issue was entered,[3] and the cases were consolidated. The

---

[3] The parties have entered into a stipulation providing that the restraining order issued would continue in effect to bar the disclosure of any

parties entered into a stipulation requiring the Board to file with the court certain information concerning the documents relating to disability pensions, as contained in its files. The Board also answered several interrogatories concerning the funding of pensions. The Globe then moved for summary judgment, Mass. R. Civ. P. 56, 365 Mass. 824 (1974), asserting that all of the requested records, as matter of law, consisted of nonexempt public records as defined by G. L. c. 4, § 7, Twenty-sixth (c),[4] and were subject to mandatory disclosure under G. L. c. 66, § 10.[5]

The judgment entered by the judge (1) ordered the Board to disclose to the Globe records containing the "names of those receiving disability pensions, the date of the disability pension award, the amount of the disability pension, and the department from which the pension came";[6] and (2)

medical information relating to any recipient of any disability claim processed by the Board until further order by the court.

[4] General Laws c. 4, § 7, Twenty-sixth, as amended through St. 1979, c. 230, provides in relevant part: "'Public records' shall mean all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within the following exemptions in that they are: . . . (c) personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy."

[5] General Laws c. 66, § 10 (a), as appearing in St. 1978, c. 294, provides: "Every person having custody of any public record, as defined in clause Twenty-sixth of section seven of chapter four, shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee. Every person for whom a search of public records is made shall, at the direction of the person having custody of such records, pay the actual expense of such search."

[6] The portion of the judgment ordering the above information to be disclosed to the Globe has not been appealed and is not before this court.

enjoined the Board from disclosing to the Globe "a cursory statement of the medical reason for granting the disability."[7] The Globe brings this appeal; the appeal is here on our grant of an application for direct appellate review. We vacate the judgment for entry of a modified judgment on remand.

This controversy arose in the following circumstances. On June 26, 1978, the Globe formally requested access to certain information pertaining to former employees of the city of Boston who were receiving disability pensions. Specifically, the Globe sought (1) the names of all former employees receiving disability pensions from the city of Boston; (2) the dates on which each employee's pension had been approved; (3) the amount received annually by each pensioner; (4) the department in which each person was employed at the time of the person's pension application; and (5) "the medical reason given by each employee in applying and receiving his disability pension, e.g., bad back, heart problem, hypertension, etc." The Board did not formally respond to the request.

On January 12, 1979, the Globe filed a petition with the Supervisor of Public Records seeking an administrative determination as to whether the information sought was subject to mandatory disclosure pursuant to G. L. c. 66, § 10. The Supervisor ordered the Board to make the requested information available to the Globe. The Board refused, and these actions followed. We address the contentions of the parties to the extent necessary to determine this appeal.

1. The public records statute, G. L. c. 66, § 10, requires public access to various records and documents in the possession of public officials. The class of records to which the public must be afforded access is defined in G. L. c. 4, § 7, Twenty-sixth. This section establishes a broad definition of

_____

[7] The judgment also enjoined the Board "from giving any medical information whatsoever concerning persons receiving disability pensions as all such medical files and information [are] absolutely exempt from disclosure."

public records but contains nine exemptions. Records falling within the scope of an exemption are not subject to mandatory public disclosure under G. L. c. 66, § 10.[8] At issue in this appeal is the scope of G. L. c. 4, § 7, Twenty-sixth (c), as amended by St. 1977, c. 691, § 1, which excludes from the definition of public records "personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy."

We are asked to decide whether the clause, "the disclosure of which may constitute an unwarranted invasion of personal privacy," modifies the first phrase, "personnel and medical files or information," or only applies to the second phrase, "also any other materials or data relating to a specifically named individual." If the modifying clause does not apply to the first phrase, we must defer to the Legislature's decision that medical files or information are absolutely exempt from disclosure.[9]

---

[8] Our decision today concerns whether the documents sought here are subject to mandatory disclosure as public records under G. L. c. 66, § 10. We do not decide whether these documents might constitute a "public record" for other purposes. Our opinions have paid close attention to the specific context and issue of the case. See *Ricciutti* v. *Sylvania Elec. Prods. Inc.*, 343 Mass. 347 (1961) (agreements for the payment of compensation which must be "filed" with the Industrial Accident Board are not admissible in evidence); *Gerry* v. *Worcester Consol. St. Ry.*, 248 Mass. 559, 566-568 (1924) (report made by employer to the Industrial Accident Board is not admissible as a public record). We also do not consider any issue concerning the exception to the hearsay rule for public records or official written statements. See *Julian* v. *Randazzo*, 380 Mass. 391, 393 (1980) (conclusion of police report not admissible); *Commonwealth* v. *Slavski*, 245 Mass. 405, 413-418 (1923) (certificates prepared by an analyst of the department of health are admissible). Cf. Proposed Mass. R. Evid. 803 (8). Many public records and reports are exempt from disclosure or privileged by virtue of a specific State statute. See P.J. Liacos, Massachusetts Evidence 194-196 (5th ed. 1981). Cf. G. L. c. 4, § 7, Twenty-sixth (a).

[9] Under an absolute exemption, the inquiry is limited to whether the records sought are or contain "personnel and medical files or information." Under the Federal law, a similar inquiry is undertaken to determine if the records sought are "personnel and medical files and

We begin our analysis by applying "'the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation.'" *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 230-231 (1982), quoting *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 133 (1949). *Hopkins* v. *Hopkins*, 287 Mass. 542, 547 (1934). See G. L. c. 4, § 6. The use of a semicolon usually indicates that each clause is intended to be independent. *Moulton* v. *Brookline Rent Control Bd.*, *supra* at 231-232. *Commonwealth* v. *Kelley*, 177 Mass. 221 (1900). We are aware, however, that matters of punctuation are not necessarily determinative and should not be allowed to defeat the true purpose and meaning of a statute. See *Dowling* v. *Assessors of Boston*, 268 Mass. 480, 488 (1929). We therefore consider whether other factors require that a different construction be adopted from that which is indicated by a literal, grammatical reading of the statute.

We continue with a comparison of the exemption with its Federal counterpart.[10] Such comparison gives little solace to the Globe's cause. If the language of a statute differs in material respects from a previously enacted analogous Federal statute which the Legislature appears to have consid-

similar files." If the records meet this requirement, the Federal courts then determine if the disclosure of the document would constitute an unwarranted invasion of privacy under the particular language of the Federal statute, 5 U.S.C. § 552 (b) (6) (1976). *United States Dep't of State* v. *Washington Post Co.*, 456 U.S. 595, 602 & n.4 (1982).

[10] The parties also cite the opinions of the Attorney General in support of their respective positions. Rep. A.G., Pub. Doc. No. 12, at 170 (1979) (names of patients receiving treatment for alcoholism exempt from disclosure). Rep. A.G., Pub. Doc. No. 12, at 91 (1977) (medical reports, hospital records, and transcripts of doctors' testimony in the possession of the Division of Industrial Accidents exempt from disclosure). Rep. A.G., Pub. Doc. No. 12, at 161-162 (1977) (names, addresses, and registration numbers, as well as educational and professional qualifications, of members of regulated trades and professions are not exempt; age, marital status, and other similar personal details are exempt). These opinions, however, do not clearly address the issue before us, and we do not rely on them.

ered, a decision to reject the legal standards embodied or implicit in the language of the Federal statute may be inferred.[11] *International Fidelity Ins. Co.* v. *Wilson,* 387 Mass. 841, 854-855 (1983). The Federal statute exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. 552 (b) (6) (1976). This language clearly implies that the words "personnel" and "medical" files are subject to the qualifying language of the modifying clause. *Department of the Air Force* v. *Rose,* 425 U.S. 352 (1976).

The Massachusetts exemption, however, differs in several material respects. First, it substitutes the phrase "files or information" for the word "files" in the Federal statute. Second, the Massachusetts statute contains a semicolon after the word "information"; the Federal statute contains no such punctuation. Third, the phrase "similar files" in the Federal statute is replaced in the Massachusetts statute by the phrase "also any other materials or data relating to a specifically named individual." These differences between the two statutes reflect a conscious decision by the Legislature to deviate from the standard embodied in the Federal statute concerning the disclosure of medical and personnel information. The absence of a semicolon from the Federal exemption strengthens the view that the semicolon at issue here is not without meaning. Its insertion by the Legislature in G. L. c. 4, § 7, Twenty-sixth (c), manifests a desire to ensure that the first clause would not be subject to the language of the modifying clause.

The omission of the phrase "similar files" is consistent with this reading of the exemption. Under the Federal

---

[11] In a general way, the Massachusetts statute is patterned on the Federal Freedom of Information Act. Compare G. L. c. 4, § 7, Twenty-sixth, with 5 U.S.C. § 552 (b) (1976). The Legislature amended the exemption in 1977 to insert the word "unwarranted." St. 1977, c. 691, § 1. In the Second Interim Report of the Special Legislative Commission on Privacy, 1977 House Doc. No. 6106, at 10, the commission stated that "[t]he new phrasing is also more in line with that used in the cognate federal statute."

statute, the term "similar files" can be defined only with reference to the character of medical and personnel files and hinges on the personal nature of the information contained. *Pacific Molasses Co.* v. *NLRB Regional Office # 15,* 577 F.2d 1172, 1179-1181 (5th Cir. 1978), and cases cited. See *Department of the Air Force* v. *Rose, supra* at 376-377. Thus, in the Federal statute the phrase "personnel and medical files and similar files" must be read together as a whole. The insertion of the semicolon in our statute, however, shatters the unity of the phrase. It is apparent that the Legislature recognized that it would be inappropriate to use a term which could be interpreted only by referring back to the first phrase of the statute. It seems clear that the Legislature intentionally utilized this method to establish a third category of "materials or data relating to a specifically named individual" which could be applied independently of the first phrase.[12] We conclude that this comparison with the Federal exemption is strong evidence that we should follow the plain language of our exemption and hold that medical files or information are absolutely exempt from disclosure.

The Globe advances several reasons why we should disregard what seems to be the clear intent of the Legislature to establish an absolute exemption for personnel or medical files or information. First, the Globe argues that giving the statute its plain meaning will frustrate the policy of disclosure underlying G. L. c. 66, § 10, will lead to absurd results, and will require overruling our decision in *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn,* 374 Mass. 812, 817-818 (1978), which held that documents containing the names and salaries of police officers are public records.

---

[12] Our cases which have construed the exemption found in G. L. c. 4, § 7, Twenty-sixth (*c*), have focused entirely on the language of exemption following the semicolon without any reference back to the first phrase. See *Attorney Gen.* v. *Assistant Comm'r of the Real Property Dep't of Boston,* 380 Mass. 623, 625 (1980); *Reinstein* v. *Police Comm'r of Boston,* 378 Mass. 281, 292 (1979); *Attorney Gen.* v. *Collector of Lynn,* 377 Mass. 151, 153, 156 (1979); *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn,* 374 Mass. 812, 817 (1978).

The Globe's argument is that an absolute exemption for "personnel and medical files or information" would mean that, contrary to our decision in *Hastings,* records pertaining to public employees would become unavailable.

We think the Globe's argument gives too broad a meaning to the words "personnel and medical files or information." Not every bit of information which might be found in a personnel or medical file is necessarily personal so as to fall within the exemption's protection. Cf. *Bougas* v. *Chief of Police of Lexington,* 371 Mass. 59, 65-66 (1976).[13]

The Globe makes much of the Legislature's use of the phrase "files *or information*" (emphasis added). We do not believe that the addition of the words "or information" eliminates the requirement that information be of a personal nature.[14] Rather, it appears that the Legislature wished to avoid the problems which would follow from a restrictive interpretation of the term "files." See *Wine Hobby USA, Inc.* v. *United States Internal Revenue Serv.,* 502 F.2d 133, 135 (3d Cir. 1974) (broad interpretation of "files" deemed necessary to avoid a denial of statutory protection in a case where release of requested materials would result in a clearly unwarranted invasion of personal privacy). The Legislature's choice of words was intended to ensure that the scope of the exemption turn on the character of the information sought rather than on the question whether the documents containing the information constituted a file.

---

[13] In no way does our decision today impair our holding in *Hastings.* In that case, the court held that exemption did not apply since municipal payroll records "are not the kind of private facts that the Legislature intended to exempt from mandatory disclosure." *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn, supra* at 818.

[14] The Globe also contends that our construction of the statute would conceivably exempt from public disclosure statistical studies on various medical matters. Our opinion does not require this result. Purely statistical information compiled from personnel or medical records which did not allow the identification of any individual would not be of a personal nature, and, hence, would be subject to disclosure. Cf. *United States Dep't of State* v. *Washington Post Co.,* 456 U.S. 595, 602 & n.4 (1982) (information unrelated to any particular individual does not satisfy threshold requirement of exemption).

The Globe argues also that the scope of the exemption is ambiguous and, as a consequence, we must interpret it in accordance with the manifest purpose of the public records law. We agree that the dominant purpose of the law is to afford the public broad access to governmental records. See *Attorney Gen. v. Assistant Comm'r of the Real Property Dep't of Boston*, 380 Mass. 623, 625 (1980). But this purpose should not be used as a means of disregarding the considered judgment of the Legislature that the public right of access should be restricted in certain circumstances. *Bougas v. Chief of Police of Lexington, supra* at 62-63. *Fund for Constitutional Gov't v. National Archives*, 656 F.2d 856, 862 (D.C. Cir. 1981). *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527 (D.C. Cir. 1979). In the case of "personnel and medical files or information," the Legislature decided that it, and not others, should strike the balance between the public interest in disclosure and the legitimate interest in personal privacy of individuals about whom the government maintains information.[15] It is not within the province of this court to rewrite the statute to strike a different balance.

Next, the Globe points to the provisions of more recently enacted statutes which maintain the confidentiality of certain medical information required to be submitted to the Department of Public Health. See G. L. c. 111, § 110B, inserted by St. 1978, c. 395 (treatment or examination of Reyes syndrome); G. L. c. 111, § 111B, inserted by St. 1980, c. 393, § 1 (registry of malignant diseases); G. L. c. 111, § 202, inserted by St. 1977, c. 598, § 5 (report of fetal deaths); G. L. c. 111D, § 6, inserted by St. 1975, c. 881, § 1 (report of infectious diseases). It argues that the inclusion of these confidentiality provisions would not have been necessary if medical files or information are absolutely

---

[15] Our cases have indicated that public employees may have a diminished expectation of privacy in matters concerning their employment. See *Hastings & Sons Publishing Co. v. City Treasurer of Lynn, supra* at 818-819. This element is an important consideration under the second phrase of the exemption. *Id.*

exempt from disclosure. Thus, the provisions are to be taken as evidence that the Legislature has interpreted the statute as permitting the release of some medical files or information.

This argument is not persuasive. It would have more appeal if the confidentiality provisions had been enacted contemporaneously with the exemption.[16] More importantly, an examination of these provisions reveals that their inclusion is not inconsistent with an absolute exemption for medical files or information. It is clear that the Legislature saw the need to establish a more sensitive and particularized balance between the public interest in disclosure and the individual's interest in personal privacy than is possible under a general exemption. For example, G. L. c. 111, § 110B, provides that the Department of Public Health may release reports concerning the treatment of Reyes syndrome "to persons authorized by the commissioner to conduct research studies or to other persons." It places the additional restriction that "no report or record shall be released which allows identification of the subjects of said reports or records." G. L. c. 111, § 110B, inserted by St. 1978, c. 395. This more delicate resolution of the interests implicated by disclosure is not easily accomplished under a general exemption.[17] Cf. *Bougas* v. *Chief of Police of Lexington, supra* at 64 (public records law and its exemptions do not discrimi-

---

[16] Since we place no special emphasis on this fact, we need not inquire into the question of the proper weight which should be accorded subsequent acts of the Legislature as an aid in the interpretation of a statute. *Boston Ass'n of School Adm'rs & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 342-343 (1981).

[17] We note that reliance on these specific confidentiality provisions as a means of restricting the scope of the more general exemption is inappropriate here. A conscientious legislator, sensitive to the privacy interests of private individuals, would, in all likelihood, support both the specific provisions and the general exemption. Such action is reasonable because general exemption may require judicial interpretation before its scope is completely clear. The enactment of specific provisions ensures that a construction of the general exemption which may be required does not cause unfortunate results. Reliance then on these provisions as a means of restricting the scope of the exemption could discourage this salutary process.

nate among persons seeking disclosure). Indeed, such enactments are entirely consistent with the more general exemption of G. L. c. 4, § 7, Twenty-sixth (a), as appearing in St. 1973, c. 1050, § 1, which exempts from the definition of public records those records which are "specifically or by necessary implication exempted from disclosure by statute."

We conclude that medical and personnel files or information are absolutely exempt from mandatory disclosure where the files or information are of a personal nature and relate to a particular individual. But information which does not permit the identification of any individual is not exempt. *United States Dep't of State* v. *Washington Post Co.*, 456 U.S. 595, 602 & n.4 (1982). We must therefore consider whether the deletion of particular identifying details from the documents sought (the certificates issued by the medical panel) may bring the documents outside the exemption. *Reinstein* v. *Police Comm'r of Boston*, 378 Mass. 281, 293 (1979). G. L. c. 66, § 10 (segregable portion of a record which is an independent public record must be disclosed). The inquiry as to what constitutes identifying information regarding an individual who has been granted a pension must be considered not only from the viewpoint of the public but also from the vantage of those who are familiar with the individual and his career. See *Department of the Air Force* v. *Rose*, 425 U.S. 352, 380 (1976). *Alirez* v. *NLRB*, 676 F.2d 423, 427-428 (10th Cir. 1982). In the present case, the Board is obligated to release considerable amounts of information concerning the awarding of individual pensions. We conclude that the release of the medical statements, even without other particular identifying details, creates a grave risk of indirect identification. The information is, therefore, exempt from disclosure by virtue of G. L. c. 4, § 7, Twenty-sixth (c).[18]

---

[18] The certificate of the medical panel contains much information which is not exempt from disclosure. Thus, once the medical statement or information is deleted from the certificate or a copy, the certificate is subject to disclosure. It may be appropriate on remand, therefore, to follow the in camera procedures set forth in *Reinstein* v. *Police Comm'r of Bos-*

2. The Globe argues, however, that we should disregard the exemption entirely. It relies on St. 1973, c. 1050, § 6, which provided that the exemptions shall not be construed to exempt from the definition of public records, any record which was a public record on July 1, 1974, the effective date of that statute.[19] It follows then that documents which were public records before July 1, 1974, remain public records today. Before that date, the term "public records" was defined in relevant part as follows: "'Public records' shall mean any written or printed book or paper, any map or plan of the commonwealth, or of any county, district, city, town or authority established by the general court to serve a public purpose, which is the property thereof, and in or on which any entry has been made or is required to be made by law, or which any officer or employee of the commonwealth or of a county, district, city, town or such authority has received or is required to receive for filing, any official correspondence of any officer or employee of the commonwealth or of a county, district, city, town or such authority, and any book, paper, record or copy mentioned in section eleven A of chapter thirty A, where applicable, section nine F of chapter thirty-four, section twenty-three A of chapter thirty-nine, or sections five to eight, inclusive, and sixteen of chapter sixty-six, including public records made by photographic process as provided in section three of said chapter." G. L. c. 4, § 7, Twenty-sixth, as amended by St. 1969, c. 831, § 2. The Globe's contention is that the "cursory statement of the medical reason" for the Board's decision to grant a disability pension is found in documents which fell within the prior definition of "public records" and which, as a consequence, remain public records today.

---

ton, 378 Mass. 281, 294-296 (1979), to determine which portions of the medical panel's certificate, and other records, are not within the exemption discussed here, and hence subject to disclosure.

[19] The Globe's argument below focused on the scope of the exemption and referred only in passing to St. 1973, c. 1050, § 6. The Board, the Firefighters, and the Patrolmen have not responded to it on appeal.

This attempt to circumvent the exemption is unpersuasive. The Globe contends that the certificate which a medical panel is required to issue under G. L. c. 32, §§ 6 (3) (a) & 7 (1), describing the disability from which the applicant suffers, was a public record prior to July 1, 1974. This contention turns on whether the certificate is a document which the Board "has received or is required to receive for filing."

Our cases indicate that the records which are "receive[d] for filing" "relate[ ] to books, papers and maps which are intended for the use of the public." *Round* v. *Police Comm'r for Boston*, 197 Mass. 218, 220 (1908).[20] But records which are filed with a governmental entity merely to aid that entity in the administration of its duties are not public records. *Gerry* v. *Worcester Consol. St. Ry.*, 248 Mass. 559, 567 (1924). Thus, in *Gerry* we held that accident reports which employers were required to file with the Industrial Accident Board were not public records. We must, therefore, inquire whether the medical certificate is intended for the use of the public or for the use of the Board as an aid in the administration of its duties.

We think that *Gerry* disposes of the issue. The panel's certificate "provides an effective vehicle for determining the preliminary medical question which would normally be beyond the competence of the local board." *Malden Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 1 Mass. App. Ct. 420, 424 (1973).[21] The certificate is intended to

---

[20] The decision in *Round* v. *Police Comm'r for Boston*, 197 Mass. 218 (1908), concerned certain reports ("returns") which pawnbrokers were required to furnish to a licensing board.

[21] Indeed, the determinations which the Board must make are analogous to those made by the Industrial Accident Board. *Wakefield Contributory Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 352 Mass. 499, 503 (1967). *Kelley* v. *Contributory Retirement Appeal Bd.*, 341 Mass. 611, 614 (1961). Both the reports involved in *Gerry* v. *Worcester Consol. St. Ry.*, 248 Mass. 559 (1924), and the medical certificates here are necessary to the work of the respective Boards.

aid the board in the administration of its duties.[22] The certificate was, therefore, not a public record as the term was defined prior to July 1, 1974.[23]

The Globe also advances another ground for contending that these documents were public records prior to July 1, 1974. The argument is as follows. Under G. L. c. 32, § 20 (5) (*a*), the Board is required to keep a record of its proceedings. A record of a public proceeding which must be kept by statute constituted a public record under the old definition of public records. *New England Box Co.* v. *C & R Constr. Co.*, 313 Mass. 696, 703 (1943). Thus, since the medical certificate may be contained in the record of the Board's proceedings, the information must be disclosed.

The implications of this argument are far reaching. Under G. L. c. 32, § 20 (5) (*b*), as amended through St. 1956, c. 422, § 2, the Board is empowered "to take evidence, subpoena witnesses, administer oaths and examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute." Unless the word "proceedings" is restricted in meaning, all the evidence and testimony before the Board is a matter of public record, regardless of any privacy interest at stake. We do not think that the Legislature intended this result.

The word "proceedings" connotes that the Board is required by G. L. c. 32, § 20 (5) (*a*), to keep a record of subjects acted on and the votes and other official actions taken by the Board. See G. L. c. 66, § 5A. Thus, under *New*

---

[22] The Globe relies on *Lord* v. *Registrar of Motor Vehicles,* 347 Mass. 608 (1964), which held that reports required to be furnished to the Registrar by persons involved in automobile accidents were public records. The present situation is clearly closer to that in *Gerry* than in *Lord.* We note also that *Lord* did not dispense with the requirement that the reports be of some usefulness to the general public. *Lord* v. *Registrar of Motor Vehicles, supra* at 610, 612.

[23] The Globe also contends that the application furnished by an employee for a disability pension was a public record prior to July 1, 1974. We see no reason to distinguish between the application and the medical certificate. Therefore our reasoning applies with equal force to the application.

*England Box Co., supra,* which concerned whether a public board had taken a certain action, those matters are clearly public records. But it is not required by G. L. c. 32, § 20 (5) (*a*), that a record of the medical certificate relied on for granting a disability pension be kept as part of the Board's proceedings. We conclude, therefore, that the medical statements sought here are not subject to mandatory disclosure as part of the Board's "proceedings."

3. The Globe commenced this action for injunctive and declaratory relief after the Board refused to comply with the order issued by the Supervisor of Public Records. We have determined that the Supervisor erred in concluding that G. L. c. 66, § 10, required that the cursory medical statements be disclosed. The Board has not given any indication that it intends to disclose the cursory medical statements unless it is ordered to do so. If we venture further, we shall be required to decide several issues which are not strictly necessary to the disposition of this case and which have not been fully briefed by all parties.[24] We, therefore, leave them for another day.

We vacate that portion of the judgment which enjoins the Board from disclosing "a cursory statement of the medical reason for granting the disability pension" and from "giving any medical information whatsoever concerning persons receiving disability pensions." The case is remanded to the Superior Court for the entry of a declaration of rights in conformity with this opinion. See *Pina* v. *Liberty Mut. Ins. Co., post* 1001 (1983).

*So ordered.*

---

[24] We do not consider what rights a submitter of information to a governmental entity may have to restrain disclosure of exempt information by that entity. See *Chrysler Corp.* v. *Brown,* 441 U.S. 281 (1979). We have assumed that the exemptions are not mandatory, at least where the party protected by the exemption is a governmental entity. *Westinghouse Broadcasting Co.* v. *Sergeant-at-Arms of the Gen. Court,* 375 Mass. 179, 185 n.9 (1978) (dictum). A different range of interests is implicated when the party protected by the exemption is a private individual.