SOMNUK VIRIYAHIRANPAIBOON *vs.* DEPARTMENT OF STATE POLICE & another.[1]

No. 99-P-1303.

Suffolk. April 19, 2001. - October 16, 2001.

Present: GELINAS, DREBEN, & COHEN, JJ.

*Practice, Civil,* Relief in the nature of certiorari. *Rules of the Superior Court.* *Supervisor of Public Records. Public Records. Privacy. Statute, Construction.*

On a motion to dismiss in a civil action, the motion judge erred in granting the motion before the time for serving an opposition to the motion had elapsed; however, the error was harmless, because the plaintiff, as a matter of law, could not receive the relief sought. [845-847]

In a civil action to obtain copies of laboratory reports containing blood tests, the plaintiff, as a matter of law, was not entitled to obtain such records, because blood tests in general, and particularly those which reveal genetic markers, are medical data about a person's body and thus are absolutely exempt from disclosure as medical information under G. L. c. 4, § 7, Twenty-sixth (*c*). [847-849]

CIVIL ACTION commenced in the Superior Court Department on July 10, 1998.

A motion to dismiss was heard by *Allan van Gestel*, J.

The case was submitted on briefs.

*Somnuk Viriyahiranpaiboon*, pro se.

*Thomas F. Reilly*, Attorney General, *& Candies Pruitt*, Assistant Attorney General, for Department of State Police & another.

DREBEN, J. The plaintiff, an inmate at Massachusetts Correctional Institute, Norfolk, sought, pursuant to the Public Records Act, G. L. c. 66, § 10(*b*), to obtain copies of laboratory reports of the Department of State Police (department) contain-

---

[1]Supervisor of Public Records.

ing blood tests relating to his conviction of first degree murder of a pregnant woman. See *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224 (1992). His attempts were rejected, first by the department, then on appeal by the supervisor of public records, and again by a judge of the Superior Court. Before us is an appeal from the judge's dismissal of the plaintiff's complaint in the nature of certiorari pursuant to G. L. c. 249, § 4. We affirm the dismissal, discussing also the defendants' procedural claim concerning Administrative Directive No. 92-1 of the Superior Court, effective May 1, 1992.

We take the facts from the plaintiff's complaint and the appended exhibits. After seeking blood grouping tests from the department in 1997, the plaintiff received material indicating that there had been tests on four individuals; the serological test results on three named individuals were included, but the name and test results on the fourth individual were redacted. The department claimed that all the material involving the plaintiff's case had been sent to him. The plaintiff filed an administrative appeal, see G. L. c. 66, § 10(*b*), to the supervisor of public records. He was informed by the supervisor that the redacted portions of the serological reports did not relate to his case, and since under G. L. c. 4, § 7, Twenty-sixth (*c*) (exemption [*c*]),[2] he was not entitled to receive medical lab results relating to another identifiable individual, his appeal was considered closed.

In his complaint in the Superior Court, the plaintiff pointed out that the fourth individual might be the fetus or another possible perpetrator, and claimed that he was entitled to this information to show that someone else had an opportunity to commit the murder. The defendants countered with "a motion to dismiss and/or summary judgment," which was allowed by the motion judge "for the reasons stated in the supporting

---

[2]General Laws c. 4, § 7, Twenty-sixth, defines "public records" to include all documentary materials or data made or received by any employee of the Commonwealth unless it falls within certain exemptions.

Exemption (*c*), one of numerous exemptions, provides as follows:

"personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy[.]"

memorandum." Those reasons were (a) the supervisor of public records was not a proper party on the authority of *General Chem. Corp.* v. *Department of Envtl. Quality Engr.*, 19 Mass. App. Ct. 287, 293-294 (1985); and (b) the department had properly redacted the serological reports, because exemption (*c*) provides a balancing test, i.e., whether there was an "unwarranted invasion of personal privacy." Under that test, the defendants claimed the department had correctly determined that "the right of the individuals to keep their personal blood grouping information private far outweighs the plaintiff's right to have serology reports that are completely unrelated to his case." We affirm the dismissal but for somewhat different reasons.

In his appeal, the plaintiff claims that (1) the judge failed to comply with Superior Court Rule 9A and dismissed the plaintiff's case before the ten days permitted for his opposition to the defendants' motion to dismiss; and (2) that the balancing test of exemption (*c*) was misapplied, because the reports do not reveal intimate details of a personal nature.[3]

1. *Noncompliance with Superior Court Rule 9A.* The plaintiff is correct that rule 9A(a)(2) permits a party opposing a motion to serve an opposition within "(A) 10 days after service of a motion other than a motion for summary judgment, [or] (B) 21 days after service of a motion for summary judgment."[4] If no opposition is received, the moving party must file an affidavit reciting compliance with the rule and that no opposition has been received in a timely fashion.[5] The defendants filed their motion without waiting for any opposition. The motion was allowed, and a docket entry to this effect was entered seven days

---

[3] Although the plaintiff does not raise the issue of dismissal of the supervisor of public records (in his pro se brief), and we do not reach the issue, we note that the defendants' reliance on *General Chem. Corp.* v. *Department of Envtl. Quality Engr.*, 19 Mass. App. Ct. 287 (1985), is misplaced. Since the supervisor of public records performed no role in that case, the court held it should be dismissed as a party. By contrast, in this case, the supervisor of public records acted upon the plaintiff's administrative appeal.

[4] We need not decide whether the judge treated the defendants' motion under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), or Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974). See note 5, *infra*.

[5] The defendants filed their motion with a supporting memorandum and an affidavit containing hearsay to buttress their claim that the blood tests sought

after the motion was filed. On the day the allowance was docketed, the plaintiff filed numerous motions,[6] but they were not acted upon, because the case had been dismissed.

The defendants acknowledge that rule 9A requires the moving party to serve its motion on the nonmoving party and to wait for a period of days until it receives or fails to receive an opposition from the nonmoving party. They claim, however, that the judge's action was proper under Administrative Directive 92-1, the relevant portion of which is set forth in the margin.[7] We reject the suggestion that the directive, which is intended to promote a just and speedy resolution of civil cases brought by inmates, operates to deprive them of the right to file oppositions to motions within the time allotted to all other litigants. The waiving of the packaging of motions (filing of motions and their oppositions, see 9A[b][2]) is intended to relieve the inmate of certain clerical obligations normally imposed upon moving parties, and does not affect the right of any party to file a response.

We also reject the defendants' claim that since rule 9A imposes no explicit requirement on the judge as to the time for acting upon a motion, the action of the judge was warranted. It is implicit in rule 9A that the judge may act only on proper filings. If there is a request for hearing, rule 9A(c)(2) requires the judge to consider the motion, opposition, and request, and if

did not involve the plaintiff's case. No affidavit was filed indicating that no opposition to the motion had been received.

[6]A motion for in camera discovery, a motion to strike the affidavit containing hearsay, and a motion for a stay of proceedings.

[7]The directive states:

"This administrative directive is implemented to address the unique problems that often accompany a civil action that is filed by someone who is incarcerated. Its aim is to promote a just and speedy resolution of these civil actions by ensuring:

"1. That upon filing, the complaint is entered expeditiously and appropriate notice is sent.

"2. That all named parties receive actual notice of the litigation.

"3. That the cases proceed in a timely and cost effective manner.

". . . .

"[T]he plaintiff is . . . to be notified of what is required in filing a return of service . . . and of the waiving of that part of Superior Court Rule 9A which requires the packaging of motions and responses thereto."

the motion is not set for hearing, the motion is to "be decided on the papers filed in accordance with this rule." Superior Court Rule 9A(d).

"Rules of court have the force of law and may not be disregarded by an individual judge." *Empire Apartments, Inc.* v. *Gray*, 353 Mass. 333, 337 (1967). There is no question that the proper procedure was not followed in this case.

There are instances, however, when even a clear violation of the rules does not require reversal. "There would be little point . . . in eradicating [the] procedural error if it were clear on the record that upon remand [the plaintiff] was fated to lose." *USTrust Co.* v. *Kennedy*, 17 Mass. App. Ct. 131, 137 (1983). As discussed in part 2 of this opinion, *infra*, the plaintiff, as matter of law, may not obtain the records he seeks. Accordingly, the error was harmless.

2. *Records of blood groupings.* General Laws c. 66, § 10, requires custodians of public records to make the records available for inspection and copying by any person upon request. As indicated in note 2, *supra*, "[p]ublic records are broadly defined [in G. L. c. 4, § 7, Twenty-sixth,] and include all documentary materials made or received by an officer or employee of any corporation or public entity of the Commonwealth, unless one of nine statutory exemptions is applicable." *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 614 (1993). The relevant exemption is exemption (*c*), set forth in note 2, *supra*.

Although the plaintiff, as a convicted criminal seeking a new trial, "might and probably did have a need for disclosure more pressing and more immediate than that of the general public," his heightened concern does not enhance his request under G. L. c. 66, § 10. *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 64 (1976). The statute and its exemptions do not discriminate among persons seeking disclosure. *Ibid. Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 437-438 (1983) (*Globe I*).

In *Globe I*, *supra* at 433, the court distinguished between the two clauses of exemption (*c*) which are separated by the semicolon. See note 2, *supra*. Materials in the first clause, that is, "medical and personnel files or information[,] are absolutely

exempt from mandatory disclosure where the files or information are of a personal nature and relate to a particular individual." *Globe I,* 388 Mass. at 438. In contrast to material covered by the clause after the semicolon, medical files or information permit no balancing; the Legislature has made the "decision that medical files or information are absolutely exempt from disclosure." *Id.* at 431. Moreover, contrary to the plaintiff's contention, the medical information need not concern intimate details of a highly personal nature to bar disclosure. See *Wakefield Teachers Assn.* v. *School Comm. of Wakefield,* 431 Mass. 792, 800-801 (2000).

While neither the statute nor case law defines medical information, the material held to be within the absolute exemption in *Globe I,* 388 Mass. at 438, is instructive. Even cursory medical statements such as "bad back, heart problem, hypertension," if related to identifiable persons, were held to be within the absolute exemption. *Id.* at 430.

In *Globe Newspaper Co.* v. *Chief Med. Examiner,* 404 Mass. 132, 135 (1989) (*Globe II*), which held that autopsy reports contain medical information and fall within the first clause of exemption (*c*), the court pointed out that "[t]here is a strong public policy in Massachusetts that favors confidentiality as to medical data about a person's body." Numerous statutes were cited indicating legislative concern for privacy in medical matters. An especially sensitive area of medical data is genetic information. General Laws c. 111, § 70G, as inserted by St. 2000, c. 254, § 1, enacted subsequent to the decision in *Globe II,* 404 Mass. 132, prohibits disclosure of genetic tests without the consent of the person to whom the information pertains. See G. L. c. 22E, § 9 (DNA records collected as part of State DNA database are confidential and disclosure is strictly limited).

The material appended to the plaintiff's complaint indicates that several of the blood tests were for matters listed as "EAP," "ADA," and "AK." These items were described in *Commonwealth* v. *Gomes,* 403 Mass. 258, 265-267 (1994), as tests for enzyme and protein systems used in identifying genetic markers.

Based on the strong legislative policy reviewed in *Globe II,* 404 Mass. at 135, and the cursory nature of the materials held

to be exempt medical information in *Globe I*, 388 Mass. at 438, as well as the routine use of blood tests to obtain diagnostic information, we hold that blood tests in general, and particularly those which reveal genetic markers, are "medical data about a person's body." *Globe II*, 404 Mass. at 135. Accordingly, the blood grouping tests requested by the plaintiff are absolutely exempt from disclosure under the first clause of exemption (*c*). *Globe I*, 388 Mass. at 438.[8]

*Judgment affirmed.*

---

[8]We note, and are buttressed in our conclusion by, decisions in the context of the Fourth Amendment. The United States Supreme Court, in *Skinner* v. *Railway Labor Executive Assn.*, 489 U.S. 602, 616-617 (1989), noted that "chemical analysis of urine, like that of blood, can reveal a host of private medical facts." See *Oregon* v. *Binner*, 131 Or. App. 677, 682-683 (1994), where the court held that the defendant had a privacy interest in the contents of his blood sample.