Gants, J.
The plaintiff, Globe Newspaper Co. (“the Globe”), has brought this action seeking a preliminary injunction ordering the defendants, David Driscoll, in his capacity as Commissioner of the Massachusetts Department of Education (“the Commissioner"), and the Massachusetts Department of Education (collectively, “the Department”), to produce forthwith the district-by-district, school-by-school results of the Spring 2000 Massachusetts Comprehensive Assessment System Test (“the MCAS Test”). After hearing, for the reasons detailed below, this Court hereby DENIES the Globe’s motion for preliminary injunctive relief.[1] .
Background
In October 19, 2000, Globe reporter Scott Greenberger made an oral request for the district-by-district and school-by-school results of the Spring 2000 MCAS Test to an employee of the Department of Education. Although oral, this request was a valid request for public records under the Public Records Act (“the Act”). 950 C.M.R. §32.05(3) (“Requests for public records may be oral or written”).[2] The Department did not reply to this oral request so, on November 8, 2000, Mr. Greenberger sent a letter to the Commissioner referencing the oral request and reiterating the public records request. The Department has yet to comply with either the oral or written public records request.
A similar request for MCAS Test score reports was made last year by Roselyn Tantraphol to the Commissioner, who denied the request. Under G.L.c. 66, § 10(b), Ms. Tantraphol appealed the Commissioner’s denial to the Supervisor of Public Records, who on December 2, 1999, in a three-page opinion letter ordered the Commissioner to provide the requested public records. The Supervisor of Public Records declared that the requested records were subject to mandatory disclosure and did not fall within any statutory exemption. The attorney for the Commissioner did not even argue to the Supervisor of Public Records that the records were subject to any statutory exemption, but advanced the Commissioner’s position that the MCAS Test scores would not be publicly released until each school district had received the reports and had the opportunity to review their accuracy. The Supervisor of Public Records declared that this was not an appropriate legal basis to postpone *367 disclosure of what was plainly a public record, but observed that the Commissioner could mark the reports “Subject to Correction" or “Draft” prior to release.
This year, since the Commissioner has not acted upon the Globe’s recent request for public records, the Supervisor of Public Records initiated an advisory opinion pursuant to her authority under 950 C.M.R. §32.07 and came to precisely the same conclusion. The Supervisor of Public Records concluded that “the Department may not schedule the release of public records. Once the MCAS scores have been received, those scores are subject to disclosure upon request.”
The Department contends that it did not have within its custody any district-by-district or school-by-school results of the Spring 2000 MCAS Test until November 14, 2000 when it received preliminary summary data of the district and school results from its test contractor, Harcourt Educational Measurement, Inc. (“Harcourt”). The Department declares that it plans to release the final district and school MCAS Test results on November 21, 2000, after the Department, school superintendents, and school principals have had a brief opportunity to review the preliminary results and determine their accuracy. The Department takes the position that it has no obligation under the Act to provide any district or school results until the public release of these results on November 21. The Department presents two arguments in support of this position, which this Court will examine in turn.
Is There An Exemption For Factual Reports That Are Not Reasonably Completed Which Do Not Relate To Policy Positions Being Formulated By The Department?
First, the Department argues that the preliminary summary data of the district and school MCAS Test results are not “public records” as defined under G.L.c. 4, §7(26) because they fall within exemption (d) of the definition, which exempts:
inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency; but this sub-clause shall not apply to reasonably completed factual studies or reports on which the development of such policy positions has been or may be based.
G.L.c. 4, §7(26)(d). The Department contends that the preliminary summary data are not “reasonably completed” factual reports and, therefore, are not “public records” that must be disclosed under the Act. For all practical purposes, the Department reads G.L.c. 4, §7(26)(d) to provide an exemption for factual studies or reports on which the development of policy positions has been or may be based that are notreasonably completed.
A close reading of this exemption, however, makes clear that the exemption only covers “inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency.” The statute declares that this exemption does not include within its scope “reasonably completed factual studies or reports on which the development of such policy positions has been or may be based,” meaning that these documents are public records outside the scope of the exemption. Under this provision, “factual studies or reports on which the development of such policy positions has been or may be based” that are not reasonably completed and that are part of “inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency” fall within this exemption. However, this cannot reasonably be interpreted to create a separate exemption from disclosure under the Act for factual reports that are not reasonably completed when they do not relate to policy positions being developed by the agency and are not part of “inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency.” The Department has not (and reasonably cannot) claim that these preliminary MCAS Test results relate to public policy positions being developed by the agency or are attachments to intra-agency policy memoranda. Moreover, the district and school summary data do not even fall within the scope of the exemption proposed by the Department because they are “reasonably completed.” Indeed, they are being sent to school superintendents and principals on November 16 and are scheduled for release to the public on November 21.
The Supreme Judicial Court has declared that, “(bjecause of the statute’s presumption in favor of disclosure, we have said that the statutory exemptions must be strictly and narrowly construed.” General Elec. Co. v. Department of Environmental Protection, 429 Mass. 798, 801-02 (1999). If the Supreme Judicial Court is unwilling to read into the Act an exemption for attorney work product, id. at 803-07, it will certainly be unwilling to read into the Act an exemption for uncompleted factual reports which are not attachments to inter-agency or intra-agency memoranda or letters that seek to formulate policy and which do not relate to policy positions being developed by the agency. Nor should it carve out such an exemption, because to do so would shield from public view any questionable “improvement" in factual reports that an agency may engage in before public release of the final report. For all these reasons, this Court finds that the preliminary summary data of the district and school MCAS Test results received by the Department on November 14, 2000 are “public records” subject to disclosure under the Act.
The Timeliness of the Anticipated Disclosure
The Department next argues that, since it only received the preliminary summary data on Tuesday, November 14, 2000 and plans to release it publicly on Tuesday, November 21, it has complied with the Act by providing this data “without unreasonable delay” and within ten days of receipt. The Globe argues that, *368 since these records are available and could be copied within minutes or hours, any delay beyond that time frame constitutes “unreasonable delay” under the Act.
This dispute requires this Court to harmonize two separate provisions in the Act. Under G.L.c. 66, §10(a), “Every person having custody of any public record . . . shall, at reasonable times and without unreasonable delay, permit it... to be inspected and examined by any person . . .” Under G.L.c. 66, §10(b), “[a] custodian of a public record shall, within ten days following receipt of a request for inspection or copy of a public record, comply with such request.”
There are at least three alternative harmonizing interpretations of these provisions. One is that a custodian who complies with a public records request within ten days, as a matter of law, is necessarily acting “without unreasonable delay.” It is noteworthy that neither parly adopts this interpretation. The Department (through its attorney, the Massachusetts Attorney General) concedes that there may be extraordinary circumstances (not found in this case) in which compliance within ten days could constitute “unreasonable delay.”
The second alternative interpretation is that the ten days is an outside limit, and that a custodian is to comply with a public records request “without unreasonable delay” and in no event later than ten days after receipt. This appears to be the interpretation adopted by the Supervisor of Public Records in her November 14, 2000 advisory opinion, who wrote, “Where records are clearly public, and can be readily retrieved, it would be unreasonable to require a ten-day wait before compliance." The problem with this interpretation is a pragmatic one. If this were the law, an impatient requestor making a focused request for a small number of public documents could virtually always contend that even a one day delay in complying with the record request is unreasonable and seek a court order demanding faster service. This Court doubts that the Legislature intended that the judicial remedy it preserved for those seeking public records should be routinely available to those demanding faster than ten day service on their document requests.
The third alternative interpretation is that the ten days is effectively a type of “safe harbor” provision, meaning that a custodian who complies with a records request within ten days is presumptively acting without unreasonable delay. This presumption can be overcome and judicial intervention justified only by the demonstration of extraordinary circumstances, such as the immediate need for the public record to provide necessary information for an important decision that must be made within the ten days. This Court favors the third interpretation because it preserves the theoretical possibility that an agency may violate the Act if it fails to act immediately but recognizes that, in all but the most unusual circumstances, disclosure within ten days is reasonable and judicial involvement inappropriate.
Under this third interpretation, the Department is acting “without unreasonable delay” in complying with the Globe’s request within seven days of the receipt of the requested document. The Globe’s request, important as it may be, is not the type of request that requires faster compliance under the Act. There can reasonably be no contention that important educational decisions need to be made between today, Thursday, November 16, and Tuesday, November 21 that require immediate public disclosure of the MCAS Test results. Nor is there any other compelling reason to justify this Court’s involvement in ordering disclosure earlier than it has been promised.
It should be made clear that this Court, by this ruling, is not adopting the argument that the Department’s desire to provide these results first to school superintendents and principals justifies an indefinite delay in compliance. Certainly, if this process were to take more than ten days, it would not be reasonable to postpone compliance until that process were completed. Rather, this Court finds that compliance with the public records request in this case, within ten days is presumptively reasonable, and that there are no extraordinary circumstances in this case that justify judicial involvement to order faster compliance.
This Court recognizes that the Globe’s oral request was received more than ten days ago, but this Court rejects the Globe’s argument that this requires immediate disclosure of the summary data. If this were the law, a requestor could simply make a request to an agency in advance of the agency’s receipt or even creation of a document, and then demand a copy of the document immediately after its receipt or creation. Formally, a public records request must seek a public record. That is why the Secretary of State, in his public website regarding “Commonly Asked Questions,” wrote, “The Public Records Law only applies to records which are in existence ...” A requestor should not be entitled under the law to faster service under the Act when he requests a document that is not yet a public record rather than a document that is.
Having failed to persuade this Court, at least in this motion for preliminary injunction, that it should order the Department to provide the Globe with the district and school MCAS Test results earlier than ten days after its receipt of this data, the Globe contends that the ten days have already elapsed, because Harcourt’s custody of this data should be deemed custody by the Department. This Court need not determine the difficult question of whether the custodian of the Department had “custody” of this data under G.L.c. 66, §10 because it is plain that this data did not constitute a public record until it was received by the Department. “Public records” are defined under G.L.c. 4, §7(26) as documents or data “made or received by any officer or *369 employee of any agency, executive office, department, board, commission, bureau, division, or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose . . .” The evidence is clear that this data was not “made” by any officer or employee of the Department; it was “made” by the Department’s independent test contractorHarcourt. It became a “public record” only when it was “received” by “any officer or employee” of the Department, which the Commissioner attests did not occur until November 14, 2000. Therefore, the ten-day deadline for compliance did not commence until November 14.
For all these reasons, this Court will not exercise its equitable authority to order the Department to produce forthwith either the preliminary or final district and school MCAS Test results. Therefore, the Globe’s motion for preliminary injunction is DENIED without prejudice. If the requested public records are, in fact, not provided to the Globe within ten days of their receipt by the Department, then this Court will revisit the motion for preliminary injunction.

 Since for all practical purposes, the denial of the preliminary injunction will end this case, this Court considered treating the motion for a preliminary injunction as a motion for a permanent injunction. However, since this issue is likely to emerge again whenever new MCAS Test results are tabulated, and since this case raises important issues regarding the interpretation of the Public Records Act that have not been fully-briefed, this Court has decided that the more prudent course is to treat this motion as one for preliminary injunction and leave the final decision in this case for another day.

 While written requests are recommended “where there is a substantial doubt as to whether the records requested are public, or if any appeal... is contemplated,” the regulations expressly permit the request to be furnished orally and expressly forbid a records custodian from requiring that a request be made in writing “merely to delay production.” Id.