Gants, J.
The plaintiff, Globe Newspaper Co. (“the Globe”), brought this action on November 14, 2000 seeking a preliminary injunction ordering the defendants, David Driscoll, in his capacity as Commissioner of the Massachusetts Department of Education (“the Commissioner”), and the Massachusetts Department of Education (collectively, “the Department”), to produce forthwith the district-by-district, school-by-school results of the Spring 2000 Massachusetts Comprehensive Assessment System Test (“the MCAS Test”). On November 16, 2000, after a hearing on November 15, 2000, this Court denied the Globe’s motion for preliminary injunctive relief in a nine-page Memorandum and Order [12 Mass. L. Rptr. 366).
In a footnote, this Court in that decision declared:
Since, for all practical purposes, the denial of the preliminary injunction will end this case, this Court considered treating the motion for a preliminary injunction as a motion for a permanent injunction. However, since this issue is likely to emerge again whenever new MCAS Test results are tabulated, and since this case raises important issues regarding the interpretation of the Public Records Act that have not been fully briefed, this Court has decided that the more prudent course is to treat this motion as one for preliminary injunction and leave the final decision in this case for another day.
Memorandum and Order at 1. With the filing of the cross-motions for summary judgment, that day has come.
Background
In October 19, 2000, Globe reporter Scott Greenberger contends he made an oral request for the district-by-district and school-by-school results of the Spring 2000 MCAS Test to an employee of the Department of Education. The Department did not respond to this oral request so, on November 8, 2000, Mr. Greenberger sent a letter to the Commissioner referencing the oral request and reiterating the public records request.[1]
A similar request for MCAS Test results had been made in November 1999 by Roselyn Tantraphol to the Commissioner, who denied the request. Under the *67 Public Records Act (“the Act”), G.L.c. 66, § 10(b), Ms. Tantraphol appealed the Commissioner’s denial to the Supervisor of Public Records, in the Office of the Massachusetts Secretary of State, who in a three-page opinion letter on December 2, 1999 ordered the Commissioner to provide the requested public records. The Supervisor of Public Records declared that the requested records were subject to mandatory disclosure and did not fall within any statutory exemption. The attorney for the Commissioner did not even argue to the Supervisor of Public Records that the records were subject to any statutory exemption, but advanced the Commissioner’s position that the MCAS Test scores would not be publicly released until each school district had received the reports and had the opportunity to review their accuracy. The Supervisor of Public Records declared that this was not an appropriate legal basis to postpone disclosure of what was plainly a public record, but observed that the Commissioner could mark the reports “Subject to Correction” or “Draft” prior to release.
In November 2000, when the Commissioner had not acted upon the Globe’s request for public records, the Supervisor of Public Records initiated an advisory opinion pursuant to her authority under 950 C.M.R. §32.07 and came to precisely the same conclusion. The Supervisor of Public Records concluded that “the Department may not schedule the release of public records. Once the MCAS scores have been received, those scores are subject to disclosure upon request.”
The Department did not have within its custody any district-by-district or school-by-school results of the Spring 2000 MCAS Test until Tuesday, November 14, 2000, when it received preliminary summary data of the district and school results from its test contractor, Harcourt Educational Measurement, Inc. (“Harcourt”). The Department declared that it planned to release the district and school MCAS Test results on November 21, 2000, after the Department, school superintendents, and school principals had been given a brief opportunity to review the preliminary results, determine their accuracy, and correct any errors. The Globe, contending that the Act required immediate disclosure of this preliminary data, brought this action on November 14, 2000.
The Motion for Preliminary Injunction
On November 15, 2000, one day after the complaint was filed, this Court held a hearing on the Globe’s motion for preliminary injunction. At that hearing, the Department argued that, since it only received the preliminary summary data on Tuesday, November 14, 2000 and planned to release it publicly on Tuesday, November 21, it was in compliance with the Act by providing this data “without unreasonable delay” and within ten days of receipt. The Globe argued that, since these records are available and could be copied within minutes or hours, any delay beyond that time frame constitutes “unreasonable delay" under the Act.
In the Memorandum and Order issued on November 16, 2000 denying the Globe’s motion for a preliminary injunction, this Court wrote:
This dispute requires this Court to harmonize two separate provisions in the Act. Under G.L.c. 66, § 10(a), “Every person having custody of any public record . . . shall, at reasonable times and without unreasonable delay, permit it ... to be inspected and examined by any person . . .” Under G.L.c. 66, § 10(b), “(a) custodian of a public record shall, within ten days following receipt of a request for inspection or copy of a public record, comply with such request.”
There are at least three alternative harmonizing interpretations of these provisions. One is that a custodian who complies with a public records request within ten days, as a matter of law, is necessarily acting “without unreasonable delay.” It is noteworthy that neither party adopts this interpretation. The Department (through its attorney, the Massachusetts Attorney General) concedes that there may be extraordinary circumstances (not found in this case) in which compliance within ten days could constitute “unreasonable delay.”
The second alternative interpretation is that the ten days is an outside limit, and that a custodian is to comply with a public records request “without unreasonable delay” and in no event later than ten days after receipt. This appears to be the interpretation adopted by the Supervisor of Public Records in her November 14, 2000 advisory opinion, who wrote, “Where records are clearly public, and can be readily retrieved, it would be unreasonable to require a ten-day wait before compliance.” The problem with this interpretation is a pragmatic one. If this were the law, an impatient requestor making a focused request for a small number of public documents could virtually always contend that even a one-day delay in complying with the record request is unreasonable and seek a court order demanding faster service. This Court doubts that the Legislature intended that the judicial remedy it preserved for those seeking public records should be routinely available to those demanding faster than ten day service on their document requests.
The third alternative interpretation is that the ten days is effectively a type of “safe harbor” provision, meaning that a custodian who complies with a records request within ten days is presumptively acting without unreasonable delay. This presumption can be overcome and judicial intervention justified only by the demonstration of extraordinary circumstances, such as the immediate need for the public record to provide necessary information for an important decision that must be made within the ten days. This Court favors the third interpretation because it preserves the theoretical possibility that an agency may violate the Act if it fails to *68 act immediately but recognizes that, in all but the most unusual circumstances, disclosure within ten days is reasonable and judicial involvement inappropriate.
Under this third interpretation, the Department is acting "without unreasonable delay” in complying with the Globe’s request within seven days of the receipt of the requested document. The Globe’s request, important as it may be, is not the type of request that requires faster compliance under the Act. There can reasonably be no contention that important educational decisions need to be made between today, Thursday, November 16, and Tuesday, November 21 that require immediate public disclosure of the MCAS Test results. Nor is there any other compelling reason to justify this Court’s involvement in ordering disclosure earlier than it has been promised.
It should be made clear that this Court, by this ruling, is not adopting the argument that the Department’s desire to provide these results first to school superintendents and principals justifies an indefinite delay in compliance. Certainly, if this process were to take more than ten days, it would not be reasonable to postpone compliance until that process were completed. Rather, this Court finds that compliance with the public records request in this case within ten days is presumptively reasonable, and that there are no extraordinary circumstances in this case that justify judicial involvement to order faster compliance.
This Court recognizes that the Globe’s oral request was received more than ten days ago, but this Court rejects the Globe’s argument that this requires immediate disclosure of the summary data. If this were the law, a requestor could simply make a request to an agency in advance of the agency’s receipt or even creation of a document, and then demand a copy of the document immediately after its receipt or creation. Formally, a public records request must seek a public record. That is why the Secretary of State, in his public website regarding “Commonly Asked Questions,” wrote, “The Public Records Law only applies to records which are in existence . . .” A requestor should not be entitled under the law to faster service under the Act when he requests a document that is not yet a public record rather than a document that is.
Having failed to persuade this Court, at least in this motion for preliminary injunction, that it should order the Department to provide the Globe with the district and school MCAS Test results earlier than ten days after its receipt of this data, the Globe contends that the ten days have already elapsed, because Harcourt’s custody of this data should be deemed custody by the Department. This Court need not determine the difficult question of whether the custodian of the Department had “custody” of this data under G.L.c. 66, §10 because it is plain that this data did not constitute a public record until it was received by the Department. “Public records” are defined under G.L.c. 4, §7(26) as documents or data “made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division, or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose The evidence is clear that this data was not “made” by any officer or employee of the Department; it was “made” by the Department’s independent test contractor — Harcourt. It became a “public record” only when it was “received” by “any officer or employee” of the Department, which the Commissioner attests did not occur until November 14, 2000. Therefore, the ten day deadline for compliance did not commence until November 14.
For all these reasons, this Court will not exercise its equitable authority to order the Department to produce forthwith either the preliminary or final district and school MCAS Test results. Therefore, the Globe’s motion for preliminary injunction is DENIED without prejudice. If the requested public records are, in fact, not provided to the Globe within ten days of their receipt by the Department, then this Court will revisit the motion for preliminary injunction.
The Instant Motion for Summary Judgment
In moving for summary judgment, the Globe is essentially asking this Court to revisit its decision on the motion for preliminary injunction, which this Court, in the earlier-quoted footnote from that decision, invited the parties to do. All parties agree that, although the question of public disclosure in this case is now moot (since the Department did indeed make this preliminary data public on November 21, 2000), the case itself should not be dismissed as moot, because the issues raised are capable of repetition but otherwise will evade review. See, e.g., Attorney General v. M.C.K., 432 Mass. 546, 552 (2000).
Who Bears the Burden of Proof?
In denying the motion for preliminary injunction, this Court held that the most appropriate way to harmonize two separate provisions in the Act — G.L.c. 66, §§ 10(a) and (b) — was to find that a custodian who complied (or promised to comply) with a records request within ten days was presumptively acting without unreasonable delay. Stated differently, this means that, when a person requesting public records seeks judicial review under the Act, the burden of proving that the public agency was committing “unreasonable delay” rests with the requestor if less than ten days have elapsed and on the public agency if more than ten days have elapsed. This Court, having had the opportunity to reflect on this allocation of the burden of proof, stands by it.
There is nothing in the Act that assigns the burden of proof on judicial review, so this allocation of the burden *69 plainly is not barred by the language of the Act.[2] Therefore, this Court must look to the spirit of the Act and the intent of the Legislature in deciding this issue. It is plain from the specific language of the Act — G.L.c. 66, § 10(b) — that record requests are to be complied with within ten days, so the burden of proof should rest on the public agency whenever it fails to provide requested records within the ten day deadline. When an agency promises to provide records within ten days, it does not run afoul of the deadline set in § 10(b), but it potentially may run afoul of the requirement in § 10(a) that permits inspection and, if requested, copying “without unreasonable delay.” Since the statute effectively declares that a delay of more than ten days is presumptively “unreasonable delay,” it stands to reason that a delay of ten days or less is presumptively not “unreasonable delay.” This does not mean that a delay of ten days or less may never be found unreasonable. A court, after considering the difficulty of retrieving the requested records, the importance and immediacy of the need for the information, and the agency’s reasons for delaying disclosure, may conclude that the requestor has met his burden of proving that the delay in disclosure was unreasonable.[3]
Placing the burden on the requestor who demands that public records be produced in less than ten days is also appropriate when one considers the burden that meaningful judicial review pragmatically places upon a court faced with this type of administrative appeal. In these appeals, the case will be moot within days, since it generally takes at least a few days to ascertain that the agency will not produce the documents within the ten-day deadline. This means that, for the plaintiff truly to prevail in such cases, the Court will immediately need to consider a motion for injunctive relief, set an immediate hearing, and issue an immediate order. While the order, in theory, may simply grant or deny the motion for a preliminary injunction, this decision for all practical purposes will decide the merits of the entire case, since the records will be produced with or without a preliminary injunction before the next step in the litigation can be taken. Indeed, that is what occurred here — the complaint was filed on November 14, 2000, the motion for preliminary injunction was heard on November 15 and denied on November 16, and the records nonetheless were produced on November 21. Since a records requestor, to obtain meaningful relief, essentially needs the Court to drop what it is doing so that it can adjudicate whether the agency has acted with the necessary alacrity, it seems fair to impose upon the plaintiff the burden of proving that the agency has committed “unreasonable delay.”
When is Delay “Unreasonable?”
In considering whether a delay of less than ten days constitutes “unreasonable delay,” this Court, as indicated above, finds that it is appropriate to consider and balance three factors:
1.the difficulty of retrieving the requested records,
2. the importance and immediacy of the need for the information, and
3. the agency’s reasons for delaying disclosure.[4]
As to the first factor, when the records are difficult to retrieve, whether because of the amount requested, their age, or uncertainty as to their existence or location, a plaintiff requestor will generally be hard pressed to prove that a delay of less than ten days is unreasonable. In the case at bar, the Department does not contend that the records sought by the Globe are difficult to retrieve. They apparently are contained on a single CD-Rom disk, which can be copied relatively easily and quickly.
As to the second factor, all public records are not equal either in terms of their significance or the degree to which time is of the essence in their production. When the requestor has a substantial and immediate need for those records, it may be unreasonable for the agency not to devote greater effort to their prompt production. For instance, if ten days before an election a political candidate seeks the production of voter lists so that she can organize her “get-out-the-vote” effort, the public agency cannot reasonably delay production of those records until the day of the election, even if other record requests may need to wait for this request to be honored. Conversely, when there is no articulated, immediate need for the information apart from the requestor’s desire for the information sooner rather than later, it may be reasonable for the request to be given a lower priority. In the case at bar, the Globe has not made any showing as to why time is of the essence with respect to its receipt of this information. No doubt, that is because the only reason why time is of the essence for the Globe is because it wants to publish the results before they are publicly released. This Court certainly understands why the Globe would want a “scoop” on a matter of such public interest, but the desire for a “scoop,” by itself, is not sufficient to require a public agency to grant priority to such requests.
As to the third factor, this Court recognizes that, apart from resource and logistical considerations that are considered with respect to the first factor, there may be few legitimate reasons to delay disclosure. The outcome of this case depends on whether the correction of potential errors in preliminary data is a legitimate reason to delay the release of that data for seven days. This Court acknowledges that the Supervisor of Public Records in the Office of the Massachusetts Secretary of State declared in 1999 and 2000 that it was not. Indeed, these two opinions essentially declared that, once the requested public record is located, it must be immediately handed over, and any delay in production is per se unreasonable.
This Court recognizes that the Supervisor of Public Records is the person designated in G.L.c. 66, §10 to interpret the requirements of the Act, and that her decisions are entitled to “weight and deference.” See Massachusetts Medical Society v. Commissioner of Insurance, 402 Mass. 44, 62 (1988). Yet, this Court *70 also recognizes that the issue here is ultimately one of statutory construction and that “the duty of statutory interpretation is for the courts.” See id. While this Court must carefully consider the interpretation of the Act given by the Supervisor of Public Records and adopt it if it is reasonable, this Court cannot delegate to the Supervisor its own responsibility to interpret the Act. Giving the Supervisor’s decisions the weight and deference they are due, this Court nonetheless respectfully disagrees with the Supervisor.
The Act requires that records be made available for inspection “at reasonable times and without unreasonable delay. ” G. L. c. 66, § 10(a). It does not require that they be made available “forthwith,” but that is effectively the interpretation given to that provision by the Supervisor. By making the timing of inspection subject to the rule of reason, the Legislature recognized that there may be good reasons to justify a delay in disclosure, albeit a delay of less than ten days, and that a short delay supported by such reasons may not be unreasonable.
The instant case provides just such an example of a justifiable reason for abrief delay in disclosure. Raw data and statistical tabulations received by any public agency are “public records” subject to disclosure under the Act. G.L.c. 4, §7(26). Such raw data and statistical tabulations must be disclosed upon request regardless of whether they are accurate or inaccurate, but that does not mean that they must be disclosed before anyone at the agency has an oppor tunify to evaluate their accuracy and correct any errors. Full and fair access to government records does not mean that an agency has to release raw data or statistical tabulations before it can determine whether it is disseminating misinformation.[5]
In the case at bar, student, school, and district MCAS Test results for the Spring 2000 tests were first received by the Department from Harcourt, its independent contractor, on November 14, 2000. When Departmental personnel examined these results, they checked the data to look for omissions, to ensure that the numbers and percentages were internally consistent, and to detect any large disparities with the previous year’s results that might indicate an error in the data. This review discovered three areas in which data were missing, and efforts were made with Harcourt to correct these omissions. Somewhat more detailed MCAS Test results were furnished directly by Harcourt to school superintendents on November 17, 2000. The districts had received raw data from Harcourt a month earlier and reported errors to Harcourt at that time. November 17, 2000 was the first opportunity the districts had to ensure that the errors they reported had been corrected. Harcourt established a hotline to receive information from school districts as to problems with the reports, and numerous errors were reported. While most of these errors were minor, some were not, such as the misclassification of students in an alternative high school as attending a regional vocational technical high school. Many of these errors, including this misclassification, were corrected before the public release of this data on November 21, 2000.[6]
If the Supervisor of Public Records’ interpretation of the Act were adopted, the Department would be obliged to release the data to the Globe on November 14, 2000 when it received it, and would have no opportunity to check to see that the data was correct before it was printed in the Globe the next morning. Pragmatically, the Department would bear public responsibility for any errors in the data released and would have to cope with the consequences of such misinformation, even though it had no opportunity to prevent these errors. Plain and simple, it is not fair to the Department to require it to release data and statistical tabulations before it can take a brief look at them, examine their accuracy, and correct at least the most serious errors. No intelligent private company or organization would permit this to happen. This Court does not believe that the Legislature intended the Act to mandate that this would happen with public agencies.[7]
Therefore, considering and balancing all three factors, this Court finds that the Department was justified in delaying disclosure of the MCAS Test results for seven days to permit these results to be examined for accuracy by personnel from the Department and the school districts so that statistical and data errors (at least the most grievous errors) could be corrected. In view of this finding, this Court finds that the Globe has failed to meet its burden of proving that the delay of seven days prior to public disclosure was “unreasonable delay” under the Act. Therefore, the Globe’s motion for summary judgment is DENIED, and the Department’s motion for summary judgment is ALLOWED.
ORDER
For the reasons detailed above, this Court hereby ORDERS that:
1. the Globe’s motion for summary judgment is DENIED, and
2. the Department’s motion for summary judgment is ALLOWED. Judgment shall enter for the Department, with statutory costs.

 The Department has submitted an affidavit from Darrell Pressley, its Director of Community Outreach for Education Reform, the person to whom Mr. Greenberger claims he made the oral request. Mr. Pressley states that Mr. Greenberger never orally requested the MCAS Test results in any telephone call he had with him. As will be clear later in this decision, this Court need not resolve this factual dispute to grant summary judgment in this case.

 It is noteworthy that the Act does specifically allocate the burden of proof upon judicial review when the agency has refused to produce a record that it contends is not a “public record.” In that circumstance, “there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies.” G.L.c. 66, §10(c).

 In the Memorandum and Order denying the preliminary injunction, this Court said that “extraordinary circumstances” were needed to justify a finding of unreasonable delay when the delay was ten days or less. On reflection, this *71 Court acknowledges that a plaintiff requestor may prevail upon a showing that may demonstrate less than “extraordinary circumstances” after judicial consideration of the three factors discussed in more detail later in this decision.

 While the burden of persuasion would always rest with the plaintiff when the delay sought is less than ten days, the burden of production would rest with the public agency as to the first and third factors, and with the plaintiff as to the second factor.

 Even incorrect data and statistical tabulations have to be disclosed if requested, but it matters a great deal whether they are disclosed alone or with an accompanying corrected version.

 Of course, as of December 14, 2000, when the Department had first received these records and delayed their release to the Globe, it could not know the magnitude of the errors that would be found.

 As should be clear, nothing in this decision is intended to mean that the steps necessary to ensure the accuracy of this data may delay disclosure more than ten days.