GENERAL ELECTRIC COMPANY *VS.* DEPARTMENT OF
ENVIRONMENTAL PROTECTION & another.[1]

Suffolk. May 6, 1999. - June 24, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Department of Environmental Protection. Public Records. Attorney at Law,*
Work product. *Statute,* Construction.

Materials privileged as work product under Mass. R. Civ. P. 26 (b) (3) are not
protected from disclosure under the public records statute, G. L. c. 66,
§ 10, unless those materials fall within the scope of an express statutory
exemption. [801-806]

In the circumstances of a dispute between a manufacturer, the Department of
Environmental Protection (DEP), and various Federal agencies, including
the Environmental Protection Agency (EPA), regarding the appropriate
means of investigating and cleaning up pollution allegedly created by the
manufacturer, wherein the manufacturer insisted that the DEP and EPA
coordinate their activities regarding the contaminated sites, a judge of the
Superior Court correctly ruled that the DEP was entitled to share docu-
ments with the EPA without waiving its right to assert that the documents
were protected from disclosure to the manufacturer under G. L. c. 4, § 7,
Twenty-sixth (*d*). [806-807]

CIVIL ACTION commenced in the Superior Court Department on
April 7, 1998.

The case was heard by *Margaret R. Hinkle,* J., on motions for
summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Thomas J. Dougherty (David S. Clancy & Larissa E. Murphy*
with him) for the plaintiff.

*William L. Pardee,* Assistant Attorney General (*Richard D.
Hecht,* Assistant Attorney General, with him) for the defendants.

The following submitted briefs for amici curiae:

*Carolyn K. Ridge-MacWilliam* for Supervisor of Public Rec-
ords.

---

[1]The public records officer of the Department of Environmental Protection.
We shall refer to a single defendant.

*Cynthia L. Amara & Loretta M. Smith* for New England Legal Foundation.

GREANEY, J. The principal issue we consider in this case is whether a governmental entity subject to the public records statute, G. L. c. 66, § 10, may withhold from public disclosure documents and other records on the basis of an implied exemption for materials covered by the work product doctrine.[2] We granted the parties' applications for direct appellate review. We now vacate that part of the judgment declaring that the Department of Environmental Protection "was not incorrect, as a matter of law, to assert . . . that it may withhold documents requested under G. L. c. 66, § 10. . . . if they fall within the scope of the common-law work-product privilege," and affirm that part of the judgment declaring that the defendant "may withhold documents requested under G. L. c. 66, § 10 . . . if they meet the requirements of G. L. c. 4, § 7, [Twenty-sixth] (*d*), even if they were shared with the United States Environmental Protection Agency [EPA] as part of coordinated investigative or remedial efforts with that agency pertaining to environmental contamination allegedly related to the [plaintiff's] Pittsfield facility."

This case arises from a dispute between the plaintiff, the defendant, and various Federal agencies regarding the appropriate means of investigating and cleaning up pollution allegedly created by a manufacturing facility owned by the plaintiff in Pittsfield, and affecting areas in and around the Housatonic River. The parties dispute the propriety of the defendant's support for the EPA's proposal that all or part of the contaminated areas be designated as "Superfund" sites.[3]

During the EPA's comment period on its proposal, the plaintiff requested from the defendant pursuant to the public records statute documents allegedly relevant to the proposed designation. When the defendant responded to the plaintiff's request with a limited set of documents, the plaintiff commenced

---

[2]The work product doctrine, as stated in Mass. R. Civ. P. 26 (b) (3), 365 Mass. 772 (1974), limits the discovery of "documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney . . .)."

[3]A "Superfund" site is one listed on the National Priorities List under the Federal Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. (1994) (CERCLA).

an action in the Superior Court seeking to expedite access to the defendant's records prior to the close of the comment period, and for declaratory relief. The judge ordered the defendant to produce nonexempt documents related to the sites, and to provide an index of withheld documents. The defendant produced approximately 230 documents and provided an index of 419 withheld documents, or portions of documents, many of which were identified as work product.

The judge then entered an order of reference to a special master directing him to ascertain whether the withheld documents fell within the scope of certain statutory exemptions to the public records act, or were privileged, as the defendant claimed.[4] The judge reserved the question whether, as matter of law, the defendant's claimed exemptions and privileges could properly be asserted in response to a public records request.[5]

The parties then filed cross motions for summary judgment. The judge allowed the defendant's motion, concluding that because the public records statute should not be read as an

---

[4]The special master determined that 281 of the 419 documents withheld by the defendant constituted work product. Only seven of these documents were not also exempted under one or more of the public record statute's express exemptions.

[5]As justification for withholding certain of the requested documents, the defendant asserted the common-law attorney-client privilege and the work product doctrine. The defendant also asserted three statutory exemptions to the public records statute: G. L. c. 4, § 7, Twenty-sixth (*d*), the "policy deliberation" exemption, which exempts from the definition of public records "interagency or intra-agency memoranda or letters relating to policy positions being developed by the agency" but not "reasonably completed factual studies or reports on which the development of such policy positions has been or may be based"; G. L. c. 4, § 7, Twenty-sixth (*e*), the "personal notes" exemption, which exempts from the definition of public records "notebooks and other materials prepared by an employee of the commonwealth which are personal to him and not maintained as part of the files of the governmental unit"; and G. L. c. 4, § 7, Twenty-sixth (*f*), the "investigatory materials" exemption, which exempts from the definition of public records "investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." In its emergency motion for summary judgment, the plaintiff requested that the judge issue an order declaring the scope of the privileges and exemptions asserted by the defendant, and the legitimacy of the defendant's assertion of the common-law privileges in the public records context. The judge limited her rulings to those issues raised in the plaintiff's complaint, which included only the work product doctrine and statutory exemptions (*d*) and (*e*).

implicit legislative abrogation of well-established legal doctrines, work product enjoys an implied exemption from disclosure under the statute. The judge further concluded that, in the particular circumstances of this case, where the defendant and the EPA have coordinated their investigatory and enforcement activities regarding the contaminated sites, and did so at the insistence of the plaintiff, the defendant was entitled to share documents with the EPA without waiving its right to assert that the documents were protected from disclosure under G. L. c. 4, § 7, Twenty-sixth (*d*).

1. Our conclusion that materials privileged as work product pursuant to Mass. R. Civ. P. 26 (b) (3), 365 Mass. 772 (1974), are not protected from disclosure under the public records statute unless those materials fall within the scope of an express statutory exemption, is based on several considerations. General Laws c. 66, § 10, provides that "[e]very person having custody of any public record . . . shall, at reasonable times and without unreasonable delay, permit it . . . to be inspected and examined by any person." The statute is broad in scope, and, by the definition of "public record," expressly mandates public access to "all" records "made or received by any officer or employee of any agency . . . of the commonwealth" "unless such [records] fall within [one or more enumerated] exemptions." G. L. c. 4, § 7, Twenty-sixth. See *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 614 (1993) ("Public records are broadly defined and include all documentary materials made or received by an officer or employee of any corporation or public entity of the Commonwealth, unless one of [the] statutory exemptions is applicable"); *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 430-431 (1983) (public records broadly defined as records and documents in possession of public officials); *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 61 (1976) (documents presumed to be public records when possessed by public entity). In keeping with its fundamental purpose to ensure public access to government documents, the statute establishes "a presumption that the record sought is public," and places the burden on the custodian of the record "to prove with specificity the exemption which applies." G. L. c. 66, § 10 (*c*). See *District Attorney for the Norfolk Dist.* v. *Flatley*, 419 Mass. 507, 511 (1995). Because of the statute's presumption in favor of disclosure, we have said that the statutory exemptions must be

strictly and narrowly construed. *Attorney Gen.* v. *Assistant Comm'r of the Real Prop. Dep't of Boston,* 380 Mass. 623, 625 (1980). See *Attorney Gen.* v. *Assessors of Woburn,* 375 Mass. 430, 432 (1978).

The plain language of the statute manifests a legislative intent to provide broad public access to government documents subject only to limited exceptions. Generally, "[w]here the language of a statute is clear and unambiguous, it is conclusive as to legislative intent." *Pyle* v. *School Comm. of S. Hadley,* 423 Mass. 283, 285 (1996). See *Commonwealth* v. *Jones,* 417 Mass. 661, 664 (1994) (refusing to read into a statute an implied limitation, because "explicit language of the statute unambiguously manifests a legislative intent" that no such limitation apply); *Bronstein* v. *Prudential Ins. Co.,* 390 Mass. 701, 704 (1984) ("the statutory language is the principal source of insight into legislative purpose"). Here, the statute's clear and unambiguous language mandates disclosure of requested public records limited only by the definition of public record found in G. L. c. 4, § 7, Twenty-sixth. *Pyle* v. *School Comm. of S. Hadley, supra* at 286. "Whatever may have been the common law in the absence of statute, we are unable to discover anything in the nature or purpose of the statute specially applicable to these records . . . or in [the public records statute], applicable to public records generally, which justifies us in qualifying the broad and plain language of the Legislature by importing into it conditions and limitations which are not expressed and which are not necessary in order to give effect to its main purpose." *Direct-Mail Serv., Inc.* v. *Registrar of Motor Vehicles,* 296 Mass. 353, 356 (1937).

Although generally we "will not engage . . . in an analysis of a statute's legislative history to seek justification for a particular construction, where the statutory language at issue suggests no ambiguity of meaning," *Massachusetts Community College Council MTA/NEA* v. *Labor Relations Comm'n,* 402 Mass. 352, 354 (1988), an examination of the legislative history supports our interpretation.

"Exemption (*k*)" was a proposed amendment to 1973 House Doc. No. 7178, the bill that ultimately became the Public Records Act. The amendment, proposed by the House Ways and Means Committee, 1973 House Doc. No. 7433, sought to shield from public disclosure all "records pertaining to any civil litigation in which an agency . . . is involved, except in response to

a subpoena, and only prior to final judicial determination or settlement of such litigation." The House considered and passed the bill with the proposed amendment, but the Senate Committee on Ways and Means recommended that exemption (*k*) be deleted, and the House bill was passed by the Senate without that amendment. Senate J. 2579. A conference committee recommended that the Senate's position be adopted, and the bill was ultimately passed without exemption (*k*). As one commentator has stated, "All efforts to obtain a litigation or express public attorney's work product exemption have ultimately been rejected." A. Cella, Administrative Law and Practice § 1182, at 582 n.2 (1986).[6] The express deletion of this provision confirms our conclusion that the Legislature did not intend implicitly to incorporate a work product exemption.

The defendant correctly points out that the legislative history does not explain why the Legislature rejected an express exemption for work product. Nonetheless, we do not "read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose." *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). See *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 164 (1998) ("it is inappropriate for a judge to reinsert the rejected condition"); *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 8 (1998) ("we will not add to a statute a word that the Legislature had the option to, but chose not to, include"). We agree with the observation that the Legislature "clearly did not intend to exempt documents involved in litigation from the mandatory disclosure requirements of the [public records statute]." A. Cella, *supra* at § 1182, at 584 n.10.

A comparison of the exemption with its Federal analogue also does not advance the defendant's position. The Federal Freedom of Information Act, 5 U.S.C. § 552 (FOIA), on which the Public Records Act was modeled, see *Globe Newspaper Co.* v. *Boston Retirement Bd., supra* at 433 n.11, contains a provision that expressly exempts from disclosure documents

---

[6]The Legislature rejected 1979 House Doc. No. 1995, which would have provided a public records act exemption for "documents . . . prepared or compiled in anticipation of litigation or which are related to the subject matter of pending litigation, and which are not subject to discovery." The Attorney General also has been unsuccessful in obtaining legislative approval of measures providing an exemption for "documents, information, and tangible things prepared in anticipation of litigation." See, e.g., 1986 Senate Doc. No. 956.

ordinarily protected by the work product rule. See 5 U.S.C. § 552(b)(5). In particular, the exemption protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* The exemption is interpreted by Federal courts to include materials covered by the work product doctrine. See *Formaldehyde Inst.* v. *Department of Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989), and cases cited. See also *NLRB* v. *Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975) ("Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5"); A. Cella, *supra* at § 1182, at 582 n.2.

The cognate Massachusetts exemption differs from the Federal exemption in key respects. General Laws c. 4, § 7, Twenty-sixth (*d*), exempts from disclosure "inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency," but not "reasonably completed factual studies or reports on which the development of such policy positions has been or may be based." Thus, the Legislature removed from the counterpart Federal exemption language incorporating common law discovery protections, including protection for government attorney work product.

That the Massachusetts statute does not contain an express exemption for work product similar to that included in the FOIA is significant. "If the language of a statute differs in material respects from a previously enacted analogous Federal statute which the Legislature appears to have considered, a decision to reject the legal standards embodied or implicit in the language of the Federal statute may be inferred." *Globe Newspaper Co.* v. *Boston Retirement Bd.*, *supra* at 432-433. We conclude that the "differences between the two statutes reflect a conscious decision by the Legislature to deviate from the standard embodied in the Federal statute concerning the disclosure of [attorney work product]." *Id.* at 433. See *Acme Laundry Co.* v. *Secretary of Envt'l Affairs*, 410 Mass. 760, 770-771 (1991) (Legislature's removal from G. L. c. 21E, § 4, of limitation in analogous Federal statute [CERCLA] indicates intent to "structure [G. L. c. 21E] free from the limitation expressed in CERCLA").

The defendant contends that the public records statute must be considered in light of the common law that it superseded, and that in the absence of clear evidence to the contrary, the

statute should not be read to abrogate well-established legal doctrines, such as the work product rule. The defendant's argument mirrors the judge's analysis and her conclusion that, because the Legislature has never expressed an explicit intention to eliminate the common-law work product rule for government lawyers, the doctrine remains viable.

The distinction between the issue presented to the court in *Kerins* v. *Lima*, 425 Mass. 108, 110 (1997), on which the judge relied, and in this case, makes the statutory construction principles discussed in the *Kerins* case inapplicable to the present analysis. The question there was whether the term "parents" in G. L. c. 231, § 85G, included foster parents.[7] The term was not defined in the statute, nor was its meaning evident in the statutory language. In concluding that the term was to be given its common-law meaning, we relied on the principle that "a court will not presume that the Legislature intended . . . a radical change in the common law without a clear expression of such intent." *Id.*, quoting *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, 407 Mass. 123, 129 (1990), *S.C.*, 412 Mass. 309 (1992). Moreover, our examination of the statute's legislative history indicated that the Legislature had not contemplated including foster parents within the coverage of the statute. *Kerins* v. *Lima, supra* at 113.

In contrast, this case does not concern an ambiguity in G. L. c. 66, § 10, that invites differing interpretations, and the Legislature clearly considered, but rejected, the exemption sought by the defendant. Nor is this a case where we would apply the rule of statutory construction that a statute is not to be construed to effect a material change in the common law unless the Legislature has clearly expressed this intent. There is no ambiguity in the statute's explicit mandate that the public have access to all government documents and records except those that fall within the scope of an express statutory exemption. As we said in construing an analogous statute, the open meetings law as it applies to municipal governments, G. L. c. 39, § 23B,[8] "exceptions are not to be implied. Where there is an express

---

[7]General Laws c. 231, § 85G, holds "[p]arents" responsible for damages arising from a child's "willful act . . . which results in injury or death to another person or damage to the property of another."

[8]The same principles apply to the open meetings law as it relates to State administrative agencies, G. L. c. 30A, §§ 11A and 11A ½. General Laws c. 66, § 10, and G. L. c. 30A, §§ 11A and 11A ½, are like statutes in that

exception, it comprises the only limitation on the operation of the statute and no other exceptions will be implied." *District Attorney for the Plymouth Dist.* v. *Selectmen of Middleborough,* 395 Mass. 629, 633 (1985), quoting 2A C. Sands, Sutherland Statutory Construction § 47.11 (4th ed. 1984).[9]

We also are unpersuaded by the defendants' contention that G. L. c. 4, § 7, Twenty-sixth (*a*), which exempts materials "specifically or by necessary implication exempted from disclosure by statute," incorporates Mass. R. Civ. P. 26 (b) (3), 365 Mass. 722 (1974), providing for the protection of work product. Merely because the Massachusetts Rules of Civil Procedure were promulgated under statutory authority and in close cooperation with the Legislature does not bring them within the term "statute" as that term is used in G. L. c. 4, § 7, Twenty-sixth (*a*). Cf. *Founding Church of Scientology of Wash., D.C., Inc.* v. *Bell,* 603 F.2d 945, 952 (D.C. Cir. 1979) (where court said that the analogous Federal exemption "is explicitly confined to material exempted from disclosure 'by statute,' and the Federal Rules of Civil Procedure simply do not satisfy this description"). See Black's Law Dictionary 1410 (6th ed. 1990) (defining "statute" to mean "[a] formal written enactment of a legislative body, whether federal, state, city, or county").[10]

2. The defendant also seeks to withhold certain documents on the basis of G. L. c. 4, § 7, Twenty-sixth (*d*), the "policy deliberation" exemption. The plaintiff contends that the judge

similar public policy considerations underlie both statutes, that is, to foster maximum public access to deliberations and decisions of State governmental bodies. In addition, both statutes contain a presumption in favor of opening up governmental processes, compare G. L. c. 30A, § 11A 1/2, with G. L. c. 66, § 10 (*c*), and the statutes each also expressly enumerate exemptions to the general mandate of disclosure. See G. L. c. 4, § 7, Twenty-sixth; G. L. c. 30A, § 11A ½.

[9]One commentator has said that "[s]ince the general provision of both the [public records statute] and the Open Meetings Law are to be broadly and liberally construed in order to effectuate the legislative purpose of openness, it follows that the exemptions to the general principle of openness embodied in both statutes must be strictly construed and narrowly applied in order not to frustrate the legislative purpose." A. Cella, Administrative Law and Practice § 1186, at 592 n.16 (1986).

[10]For the reasons discussed in *District Attorney for the Plymouth Dist.* v. *Selectmen of Middleborough,* 395 Mass. 629, 633-634 (1985), we reject the defendant's argument that the result we reach is contrary to art. 30 of the Declaration of Rights of the Massachusetts Constitution.

erred in ruling that records requested under the public records statute may be withheld by the defendant under exemption (*d*) even if they previously have been disclosed to the EPA, where the statute defines "agency" to mean agency "of the commonwealth," and protects only "inter-agency or intra-agency" records. The purpose of exemption (*d*) is to foster independent discussions between those responsible for a governmental decision in order to secure the quality of the decision. Cf. United States *vs.* Allsteel, Inc., U.S. Dist. Ct., No. 87C4638 (N.D. Ill. Dec. 21, 1988) (discussing FOIA exemption 5).

We agree with the judge's determination that in the circumstances presented here, where the defendant and EPA are cooperating agencies which hold concurrent jurisdiction over this matter, the plaintiff insisted that the agencies coordinate their activities regarding the sites and has likely benefited from that coordination, and the sharing of these documents and information with the EPA was integral to the defendant's internal decision-making processes regarding the contaminated sites, the defendant is entitled to assert protection of the shared materials under exemption (*d*). Cf. *General Elec. Co.* v. *EPA*, 18 F. Supp. 2d 138, 142-143 (D. Mass. 1998).[11]

3. That part of the judgment declaring that the defendant "was not incorrect, as a matter of law, to assert . . . that it may withhold documents requested under G. L. c. 66, § 10 . . . if they fall within the scope of the common-law work-product privilege" is vacated, and that part of the judgment declaring that the defendant "may withhold documents requested under G. L. c. 66, § 10 . . . if they meet the requirements of G. L. c. 4, § 7, [Twenty-sixth] (*d*), even if they were shared with the [EPA] as part of coordinated investigative or remedial efforts with that agency pertaining to environmental contamination allegedly related to the [plaintiff's] Pittsfield facility" is affirmed.

*So ordered.*

---

[11]If the Legislature considers an amendment to G. L. c. 66, § 10, to provide express protection for work product, it may also wish to clarify the circumstances in which materials may remain protected pursuant to exemption (*d*), where they have been shared among coordinating State and Federal agencies.