NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11759

JOHN DaROSA & others[1]  vs.  CITY OF NEW BEDFORD; MONSANTO COMPANY
& others,[2] third-party defendants.



Bristol.     January 8, 2015. - May 15, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.


Public Records.  Municipal Corporations, Public record.
    Attorney at Law, Work product, Attorney-client
    relationship.  Privileged Communication.  Practice, Civil,
    Discovery.



    Civil action commenced in the Superior Court Department on
October 24, 2008.

    A motion to strike privilege and work product objections to
certain documents and to compel their production, filed on May
15, 2014, was heard by Richard T. Moses, J.

_____

    [1] John Day, Diane Cosmo, Luis Barbosa, and Ermelinda
Barbosa.

    [2] Pharmacia Corporation; Solutia, Inc.; Cornell-Dubilier
Electronics, Inc.; AVX Corporation (AVX); NSTAR Electric
Company; NSTAR Gas Company; Tutor Perini Corporation; ABC
Disposal Service, Inc.; Goodyear Tire and Rubber Company; and
John Does 1-20.  A stipulation of dismissal with prejudice as to
third-party defendants Monsanto Company, Pharmacia Corporation,
and Solutia, Inc., was entered in the Superior Court in July,
2014.

An application for leave to prosecute an interlocutory appeal was allowed by Judd J. Carhart, J., in the Appeals Court, and the case was reported by him to that court.  The Supreme Judicial Court granted an application for direct appellate review.


Shephard S. Johnson, Jr., for city of New Bedford.
Mary K. Ryan (Cynthia M. Guizzetti with her) for AVX Corporation.
John J. Gushue, for ABC Disposal Service, Inc., was present but did not argue.
Mark P. Dolan & Stanley F. Pupecki, for Tutor Perini Corporation, submitted a brief.
Michael R. Perry & Aaron D. Rosenberg, for NSTAR Electric Company & another, submitted a brief.
John J. Davis & John M. Wilusz, for Massachusetts Municipal Association, amicus curiae, submitted a brief.
Martha Coakley, Attorney General, & Judy Zeprun Kalman, for the Commonwealth, amicus curiae, submitted a brief.
Brandon H. Moss, for Massachusetts Municipal Lawyers Association, Inc., amicus curiae, joined in a brief.


GANTS, C.J.  In General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 801 (1999) (General Electric), we held that "materials privileged as work product . . . are not protected from disclosure under the public records statute unless those materials fall within the scope of an express statutory exemption."  We noted that there is not an express statutory exemption for work product and rejected the claim that work product is protected from disclosure by an implied exemption.  See id. at 801-806.  In General Electric, the parties were not yet in litigation, so the work product was sought under the public records act rather than in discovery.  And in General Electric we did not reach the issue whether the

work product would be protected from disclosure under the "policy deliberation" exemption, G. L. c. 4, § 7, Twenty-sixth (d), known as exemption (d).  Here, the parties are in litigation, and the work product in the possession of the city of New Bedford (city) was sought in discovery.  We now revisit our holding in General Electric and explore the scope of the "policy deliberation" exemption in the context of work product sought in discovery from a municipality during litigation.  We conclude that "opinion" work product that, as codified in Mass. R. Civ. P. 26 (b) (3), 365 Mass. 772 (1974), was "prepared in anticipation of litigation or for trial by or for [a] party or . . . that . . . party's representative" falls within the scope of exemption (d) and therefore falls outside the definition of "public records" under G. L. c. 4, § 7, Twenty-sixth.  We also conclude that "fact" work product under Mass. R. Civ. P. 26 (b) (3) that was prepared in anticipation of litigation or trial falls within the scope of exemption (d), and therefore falls outside the definition of "public records," where it is not a reasonably completed study or report or, if it is reasonably completed, where it is interwoven with opinions or analysis leading to opinions.  Where work product is exempted from disclosure under the public records act, it is protected from

disclosure in discovery to the extent provided by Mass. R. Civ. P. 26.[3]

Background. The case underlying this appeal concerns liability for the costs of environmental cleanup of widespread soil contamination at and around a site that the city allegedly operated until the 1970s as an unrestricted ash dump for industrial and other waste (site). In October, 2008, property owners from a neighborhood around the site filed a civil action in the Superior Court against the city bringing common-law claims and a claim under G. L. c. 21E[4] seeking damages arising from the soil contamination. In December, 2009, the city filed a third-party complaint alleging common-law claims and cost recovery claims under G. L. c. 21E against various third-party defendants. After the original complaint was filed and before the city filed its third-party complaint, the city solicitor, on

_____

[3] We acknowledge the amicus briefs submitted by the Commonwealth and by the Massachusetts Municipal Association.

[4] G. L. c. 21E, the so-called Massachusetts "Superfund" law, provides, in relevant part, that "any person who . . . caused or is legally responsible for a release or threat of release of oil or hazardous material from a . . . site" -- including "any person who at the time of storage or disposal of any hazardous material owned or operated" the site, and "any person who . . . arranged for the transport, disposal, storage or treatment of hazardous material to" the site -- is (subject to statutory exceptions) strictly liable, jointly and severally, "to the commonwealth for all costs of assessment, containment and removal," and "to any person for damage to his real or personal property incurred or suffered as a result of such release or threat of release." G. L. c. 21E, § 5 (a).

behalf of the city, retained Andrew Smyth, a consultant at TRC Environmental Corporation (TRC), to evaluate the issues related to the claims in the civil action and to identify sources of the contamination that may be legally responsible to pay for the cleanup.[5]  Smyth provided his services directly to the city solicitor in connection with the litigation pending against the city.[6]

During the course of discovery, various third-party defendants moved to strike the city's privilege and work product objections to TRC documents and to compel their production.[7]  The third-party defendants asked, as part of the relief requested, that the city be compelled to produce documents that Smyth had prepared for the city, including two letters to the city solicitor and a fifty-two-page "evaluation report," described as

---

[5] In the course of conducting response actions at the site of the contamination pursuant to G. L. c. 21E and 310 Code Mass. Regs. §§ 40.0000, the city of New Bedford (city) retained other consultants as "Licensed Site Professionals" for the site.  The city represents that the data and records of all licensed site professionals it retained in connection with the contaminated site, as well as the data and records that Andrew Smyth evaluated for the city solicitor, were made available during discovery to all parties involved in the present litigation.

[6] After the city retained outside legal counsel later in 2009, Smyth provided his services directly to outside counsel.

[7] The motion was brought by third-party defendants Monsanto Company, Pharmacia Corporation, and Solutia, Inc., and was joined by AVX.  The motion was pursued by AVX after the three third-party defendants who originally brought the motion were dismissed from the case.

a draft, regarding the sources and occurrence of soil contamination in the relevant area of the city (collectively, TRC work product). The city responded that the TRC work product was protected from discovery by the attorney-client privilege and the work product doctrine. The motion judge rejected the city's claim of attorney-client privilege. The judge also rejected the city's contention that the documents were protected from disclosure under the work product doctrine codified in Mass. R. Civ. P. 26 (b) (3), even though he found that the documents contained "information which was intended to assist the city solicitor in advising the [c]ity as to the potential litigation." Citing General Electric, the judge concluded that the TRC work product, having been received by the city solicitor, constituted "public records" as defined in G. L. c. 4, § 7, Twenty-sixth, and therefore was subject to discovery unless it fit "within an enumerated exception." Because there is no enumerated exception for work product, and because the documents were not protected by the attorney-client privilege, the judge allowed the third-party defendants' motion, and ordered that the work product be produced. The judge noted that "but for the public records law, said materials would clearly constitute attorney work product, and would be subject to a heightened standard for disclosure as codified in Mass. R. Civ. P. 26 (b) (3)."

Following the ruling, the city moved for a protective order to preclude the third-party defendants from inquiring into the TRC work product at a deposition. The judge construed the motion as seeking a stay of the court's order, and allowed the motion to give the city an opportunity to file an interlocutory appeal. The city petitioned a single justice of the Appeals Court for interlocutory review, and the single justice allowed the petition and reported it to a full panel of the Appeals Court. We granted direct appellate review.

On appeal, the city claims that the court should exercise its inherent authority to rule that the TRC work product, even if it consists of "public records," should be protected from discovery during pending litigation by the work product doctrine codified in Mass. R. Civ. P. 26 (b) (3). The city also argues that these documents are not "public records" because they are protected from public disclosure by the "policy deliberation" exemption in G. L. c. 4, § 7, Twenty-sixth (d). Finally, the city argues that the TRC work product is protected from disclosure by the so-called derivative attorney-client privilege.

Discussion. 1. Work product. We begin our analysis by discussing the public records law. Under the public records act, G. L. c. 66, § 10 (act), "Every person having custody of any public record, as defined in [G. L. c. 4, § 7, Twenty-

sixth], shall, . . . without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person . . . ." G. L. c. 66, § 10 (a). "Public records," as defined in G. L. c. 4, § 7, Twenty-sixth, includes "all . . . documentary materials or data . . . made or received by any officer or employee" of any agency, office, or authority of State or local government, unless such records fall within one of twenty exemptions. Exemption (d), the so-called "policy deliberation" exemption, protects from public disclosure "inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency; but . . . shall not apply to reasonably completed factual studies or reports on which the development of such policy positions has been or may be based." G. L. c. 4, § 7, Twenty-sixth (d).

In General Electric, 429 Mass. at 799, we "consider[ed] . . . whether a governmental entity subject to the [act] . . . may withhold from public disclosure documents and other records on the basis of an implied exemption for materials covered by the work product doctrine." When the Department of Environmental Protection (DEP) withheld a set of documents in response to a public records request, General Electric commenced an action in the Superior Court under G. L. c. 66, § 10 (b), seeking disclosure of the withheld documents, and the parties

filed cross motions for summary judgment. See id. at 799-800. The judge allowed DEP's motion, "concluding that because the [act] should not be read as an implicit legislative abrogation of well-established legal doctrines, work product enjoys an implied exemption from disclosure under the statute." Id. at 800-801. We disagreed, concluding that work product as defined in Mass. R. Civ. P. 26 (b) (3) is "not protected from disclosure under the [act] unless those materials fall within the scope of an express statutory exemption." Id. at 801.

In support of this conclusion, we noted the broad scope of the act and its definition of "public records." See id. We also noted that the act specifically declares that, in any court proceeding challenging the withholding of a requested document, "there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies." G. L. c. 66, § 10 (c). See General Electric, 429 Mass. at 801. We determined that "the statute's clear and unambiguous language mandates disclosure of requested public records limited only by the definition of public record found in G. L. c. 4, § 7, Twenty-sixth." Id. at 802. In short, we determined that the

only exemptions in the act are those identified in the act, and refused to imply any exemption from disclosure.[8]

We further noted that the act was modeled on the Federal Freedom of Information Act, 5 U.S.C. § 552 (2012) (FOIA), which contains an exemption protecting from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  See General Electric, 429 Mass. at 803-804.  The comparable exemption in the act, exemption (d), excluded from public disclosure "inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency," and does not expressly exclude internal memoranda or letters that would not be available to a party in litigation with the agency.  G. L. c. 4, § 7, Twenty-

---

[8] Apart from the "clear and unambiguous language" of the public records act (act), we concluded that the Legislature did not intend to include an implied exemption for work product because an exemption (k) that had been included in the bill that became the act when the bill was originally passed by the House of Representatives was excluded from the bill subsequently recommended by the conference committee and was not ultimately enacted.  See General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 802-803 (1999) (General Electric).  Exemption (k) would have shielded from public disclosure all "records pertaining to any civil litigation in which an agency . . . is involved, except in response to a subpoena, and only prior to final judicial determination or settlement of such litigation."  Id.  See 1973 House Doc. No. 7433, § 1.  We declared, "The express deletion of this provision confirms our conclusion that the Legislature did not intend implicitly to incorporate a work product exemption."  General Electric, supra at 803.

sixth (d). We concluded that the "differences between the two statutes reflect a conscious decision by the Legislature to deviate from the standard embodied in the Federal statute concerning the disclosure of [attorney work product]." General Electric, supra at 804, quoting Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. 427, 433 (1983).

Having concluded that the act includes no implied exemption for documents within the common-law work product doctrine, we vacated that part of the judgment that allowed the DEP to withhold documents under such an implied exemption, but affirmed that part of the judgment that authorized DEP to withhold documents if they met the requirements of the "policy deliberation" exemption in G. L. c. 4, § 7, Twenty-sixth (d). General Electric, 429 Mass. at 807. We did not address the scope of this exemption, or whether it may protect from disclosure all or some of the documents that had been withheld under the common-law work product doctrine.

Today, we revisit the reasoning and holding in General Electric. We note that this appeal comes to us in a different posture from General Electric, in that it is not an appeal under the act from a judge's decision regarding a public records request, but rather an interlocutory appeal from a judge's

allowance of discovery of work product in a pending lawsuit.[9]  We also note that the judge appeared to understand General Electric to hold that work product otherwise protected from disclosure in litigation under Mass. R. Civ. P. 26 (b) (3) is not protected where it is received by a public employee.  The judge's decision did not address whether the reports at issue fall within exemption (d) of the act and for that reason are not public records under the act.

We no longer hold to the view declared in General Electric that there are no implied exemptions to the public records act, and that all records in the possession of a governmental entity

_____

[9] AVX did additionally file a public records request with the city solicitor's office seeking access to "correspondence and evaluative material created by TRC Companies, Inc."  The city solicitor denied AVX's request, and -- instead of challenging the denial by bringing a civil action against the city solicitor pursuant to G. L. c. 66, § 10 (b) -- AVX filed an administrative appeal with the supervisor of public records (supervisor), also pursuant to G. L. c. 66, § 10 (b).  After we had taken the city's appeal in this case under advisement, the supervisor issued a letter ruling in which the city was "ordered to provide all responsive records to [AVX] in a manner consistent with this order."  Letter Determination of the Supervisor of Public Records, SPR 14/766, Mar. 10, 2015, at 4. The supervisor found that the city had "failed to meet its burden in withholding the responsive records pursuant to [e]xemption (d)," because its response did "not contain the specificity required for the denial of access to public records."  Id. at 2.  The supervisor also found that the city "had failed to meet[] its burden of specificity to show the [attorney-client] privilege exists."  Id. at 3.  After the supervisor issued this decision, the city requested that the decision be withdrawn pending resolution of the city's appeal to this court and, in the alternative, requested that the supervisor reconsider her decision and schedule a hearing on the matter.  The supervisor has yet to rule on the city's request.

must be disclosed under the act unless they fall within one of the exemptions identified in G. L. c. 4, § 7, Twenty-sixth. In Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 445-446, 455-461 (2007), we concluded that communications within the attorney-client privilege are impliedly exempt from the definition of "public records" and therefore are protected from public disclosure under the act. We declared that "the attorney-client privilege is a fundamental component of the administration of justice," and that withdrawal of the privilege is "not required by the plain terms of the public records law" and would "severely inhibit the ability of government officials to obtain quality legal advice essential to the faithful discharge of their duties, place public entities at an unfair disadvantage vis-à-vis private parties with whom they transact business and for whom the attorney-client privilege is all but inviolable, and impede the public's strong interest in the fair and effective administration of justice." Id. at 446.

Later, in Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 211-216 (2011), we determined that documents that had been provided in discovery by a defendant to the Attorney General in an enforcement action and were protected from disclosure to others by a protective order were not subject to disclosure under the act. In response to the argument that such records, once received by the Attorney General, were not excluded from

the act by any exemption, we stated that the argument was "based on the mistaken premise that all documents in the hands of public officials must, absent an applicable exception, be made public notwithstanding a court order prohibiting their circulation." Id. at 215. We noted that the issuance of such protective orders is among the "inherent powers" of a court, and that such orders "serve to shield litigants and third parties from unwarranted disclosures, and, as a practical matter, to facilitate the discovery necessary for a trial." Id. at 213-214. We also noted that the act "is silent on the issue of protective orders," and that, "as a matter of statutory construction," we did not believe that "the Legislature would endeavor to effect such a significant change to a long-standing and fundamental power of the judiciary by implication." Id. at 215. In essence, we declared an implied exemption for records whose disclosure is limited by a court's protective order.

Before considering whether an implied exemption for work product otherwise protected in discovery under Mass. R. Civ. P. 26 (b) (3) might be necessary to preserve the fair administration of justice, we consider whether some or all such work product might be protected from disclosure under the act by the "policy deliberation" exemption in Twenty-sixth (d).[10] We

---

[10] The third-party defendants claim that the city waived its right to argue on appeal that the work product at issue in this

reject the suggestion that the Legislature, in crafting the exemptions under the act, intended that all such work product would be public records under the act and therefore would be available to the public upon request.  In General Electric, we concluded that the Legislature did not intend a separate, implied exemption for work product; we did not conclude that all work product would be outside the scope of other express exemptions.  In fact, we specifically affirmed "that part of the judgment declaring that [DEP] 'may withhold documents requested under G. L. c. 66, § 10 . . . if they meet the requirements of G. L. c. 4, § 7, [Twenty-sixth] (d).'"  General Electric, 429 Mass. at 807.[11]  The holding in General Electric was concisely

---

case is within the scope of exemption (d) because the city failed to raise that argument in opposition to the third-party defendants' motion to strike the city's privilege objections and compel production.  We reject this claim where, at the hearing on the motion, the city solicitor stated that "the reference in [General Electric] to noted exemptions . . . would apply to work conducted in anticipation of litigation," and, at the hearing on the city's subsequent motion for a protective order, the judge declared that he had considered the "deliberative process exemption" in allowing the third-party defendants' motion.

[11] In General Electric, where the Department of Environmental Protection (DEP) had shared documents with the United States Environmental Protection Agency "as part of coordinated investigative or remedial efforts," we held that DEP was "entitled to assert protection of the shared materials under exemption (d)" even though exemption (d) only protects "inter-agency or intra-agency" documents, and the public records statute defines "agency" to mean "agency of the commonwealth" and does not expressly include Federal agencies within the scope of that definition.  General Electric, 429 Mass. at 806-807.

summarized in the Suffolk Construction decision: "We concluded, in relevant part, that the [act] and its history expressed the Legislature's intent to abrogate the broad attorney work-product privilege, and instead to provide to attorney work product the narrower, time-limited protection afforded under G. L. c. 4, § 7, Twenty-sixth (d) . . . ." Suffolk Constr. Co., 449 Mass. at 455, citing General Electric, supra at 802-804.[12]

In discerning legislative intent, we recognize the importance of the difference in language that we identified in General Electric between exemption (d) and its Federal FOIA counterpart, 5 U.S.C. § 552(b)(5), but to understand the significance of those differences, we must look to the governing interpretation of FOIA exemption (5) in 1973, when exemption (d) was enacted. In Environmental Protection Agency v. Mink, 410 U.S. 73, 85-94 (1973) (Mink), the United States Supreme Court

---

But we did not reach the question whether any of the documents at issue otherwise met the requirements of exemption (d).

[12] We reject any suggestion that we can infer that the Legislature intended that all work product in the possession of a government agency be publicly available because the Legislature failed to enact exemption (k). The proposed exemption (k) would have shielded much more than work product "prepared in anticipation of litigation or for trial by or for [a] party or . . . that . . . party's representative," Mass. R. Civ. P. 26 (b) (3), 365 Mass. 772 (1974), because it included all "records pertaining to any civil litigation in which an agency . . . is involved." 1973 House Doc. No. 7433, § 1. Although we recognize that we found the failure to enact exemption (k) significant in General Electric, 429 Mass. at 802-803, we now conclude that little can be inferred from the rejection of so broad and ambiguous an exemption.

interpreted the rather barebones language of exemption (5), which exempts from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party . . . in litigation with the agency."  The Court declared that the legislative history of exemption (5) demonstrates that it was "intended to incorporate generally the recognized rule that 'confidential intra-agency advisory opinions . . . are privileged from inspection'" in order to further the public policy of "'open, frank discussion between subordinate and chief concerning administrative action.'"  Id. at 86-87, quoting Kaiser Aluminum & Chem. Corp. v. United States, 141 Ct. Cl. 38, 48-49 (1958).  The Court quoted the following passage from the report of the Senate committee that drafted the legislation:

> "It was pointed out in the comments of many of the agencies that it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny.  It was argued, and with merit, that efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'  The committee is convinced of the merits of this general proposition, but it has attempted to delimit the exception as narrowly as consistent with efficient Government operation."

Mink, supra at 87, quoting S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965).  The Court noted the difficulty of attempting to ascertain in the absence of litigation whether documents would be available in discovery, where "we do not know whether the Government is to be treated as though it were a prosecutor, a

civil plaintiff, or a defendant." Mink, supra at 86. And, distinguishing "matters of law, policy, or opinion" from "purely factual material," the Court stated, "in the absence of a claim that disclosure would jeopardize state secrets, . . . memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government" and would not be protected by exemption (5) (citation omitted). Id. at 87-89, 91.

Later that year, when the Massachusetts Legislature was crafting the act, it made clear from the language of exemption (d) that it protected documents "relating to policy positions being developed by the agency," but did not protect "reasonably completed factual studies or reports on which the development of such policy positions has been or may be based." G. L. c. 4, § 7, Twenty-sixth (d). In short, although the legislative history is silent on this point, the Legislature avoided the difficulty of ascertaining in the absence of litigation what might be discoverable by omitting the litigation language in FOIA exemption (5), and the Legislature added language clarifying the focus on the formulation of policy that was only implied by the language in FOIA exemption (5), and

expressly incorporated the understanding stated in Mink regarding purely factual material.[13]

The word "policy" is not defined in the act, but we discern from the language of exemption (d) of the act and from the historical context of its enactment that the word was intended to be defined broadly to accomplish the purpose it shares with exemption (5) of FOIA:  the protection of open, frank inter-agency and intra-agency deliberations regarding government decisions.[14]  Compare General Electric, 429 Mass. at 807 ("The purpose of exemption [d] is to foster independent discussions between those responsible for a governmental decision in order to secure the quality of the decision"), with National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975), quoting S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965), and Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966) ("the 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public; and . . . the 'decisions' and 'policies [ . . . ]

---

[13] We note that it was not until 1975, almost one and one-half years after the act was signed into law, that the United States Supreme Court explicitly stated that the work product doctrine is incorporated in exemption (5) of the Freedom of Information Act.  See National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 154-155 (1975).

[14] Cf. Webster's New World Dictionary 1045 (3d ed. 1988) (broadly defining "policy" in relevant part as "a principle, plan, or course of action, as pursued by a government").

formulated' would be the poorer as a result").  And where FOIA incorporates within its scope the Federal common-law "deliberative process privilege," we think that a parallel protection from disclosure under the public records statute was codified by the "policy deliberation" exemption in Twenty-sixth (d).  See, e.g., National Council of La Raza v. Department of Justice, 411 F.3d 350, 356 (2d Cir. 2005), quoting Grand Cent. Partnership v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) ("An inter- or intra-agency document may be withheld pursuant to the deliberative process privilege if it is:  (1) 'predecisional,' i.e., 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2) 'deliberative,' i.e., 'actually . . . related to the process by which policies are formulated'").

Where an agency, as here, is engaged in litigation, decisions regarding litigation strategy and case preparation fall within the rubric of "policy deliberation."  A decision made in anticipation of litigation or during litigation is no less a "policy" decision and is no less in need of the protection from disclosure provided by exemption (d) simply because it is made in the context of litigation.  See Bobkoski v. Board of Educ. of Cary Consol. Sch. Dist. 26, 141 F.R.D. 88, 92-93 (N.D. Ill. 1992) ("trial related strategy discussions necessarily involve a governmental entity's deliberative process

whereby the entity's members review and select among various options presented," and "the value of such strategic discussions depends upon the open and frank recommendations and opinions that the deliberative process privilege attempts to foster").[15] If anything, the need for nondisclosure of materials relating to the government's preparation for litigation is even greater than the need for nondisclosure of deliberative materials in other contexts, because litigation is an adversarial process, where the disclosure of these materials might be used to the detriment of the government by its litigation adversary. See National Council of La Raza, 411 F.3d at 356, quoting Department of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (Klamath) ("deliberative process privilege . . . is based on 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery'").

In describing the scope of exemption (d) as it applies to litigation-related work product, it makes sense to apply the work product terminology we apply in discovery during civil litigation under Mass. R. Civ. P. 26. We have recognized that there are two categories of work product under rule 26: fact

---

[15] See also Heggestad v. United States Dep't of Justice, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) ("Documents covered by the deliberative process privilege are often also protected by the attorney work-product privilege").

work product and opinion work product.  See <u>Commissioner of Revenue</u> v. <u>Comcast Corp</u>., 453 Mass. 293, 314 (2009) (<u>Comcast</u>). Under rule 26 (b) (3), "[t]he protection [for work product] is qualified, and can be overcome if the party seeking discovery demonstrates "'substantial need of the materials' and that it is 'unable without undue hardship to obtain the substantial equivalent of the materials by other means.'"  <u>Id</u>., quoting Mass. R. Civ. P. 26 (b) (3).  Opinion work product, which is described in rule 26 (b) (3) as "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," is "afforded greater protection than 'fact' work product." <u>Comcast</u>, <u>supra</u>.  We have yet to decide whether the protection of opinion work product is absolute, see <u>id</u>. at 315, but "at a minimum . . . a highly persuasive showing" is needed to justify the disclosure of opinion work product.  <u>United States</u> v. <u>Adlman</u>, 134 F.3d 1194, 1204 (2d Cir. 1998).  See <u>Comcast</u>, <u>supra</u>, quoting Reporters' Notes to Rule 26, Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 545 (LexisNexis 2008) (disclosure of opinion work product might be appropriate "only in rare or 'extremely unusual' circumstances").

Opinion work product sought in anticipation of or during the pendency of litigation is related to "policy positions being developed by the agency" and therefore is protected from

disclosure by exemption (d).  Therefore, a litigant should not succeed in obtaining opinion work product that would be protected from discovery by rule 26 (b) (3) by seeking the opinion work product through a public records request.[16]  Fact work product is not protected from disclosure under exemption (d), even if related to policy positions being developed by the agency, if it is a "reasonably completed factual stud[y] or report[] on which the development of such policy positions has been or may be based."  G. L. c. 4, § 7, Twenty-sixth (d).  Where fact work product is not contained within a "factual study or report," or where it is contained in a "factual study or report" that is not "reasonably completed," then it, too, is protected from disclosure, at least until the study or report is reasonably completed.  Moreover, where a factual study or report is reasonably completed but is interwoven with opinions or with analysis leading to opinions, a

---

[16] We recognize that exemption (d) protects documents from disclosure "only while policy is 'being developed,' that is, while the deliberative process is ongoing and incomplete." Babets v. Secretary of the Executive Office of Human Servs., 403 Mass. 230, 237 n.8 (1988).  But we also recognize that the deliberative process is always ongoing and incomplete during the course of litigation, because every decision relevant to litigation may be revisited and revised as circumstances change. We leave for another day the question whether opinion work product might no longer be protected once the litigation is concluded.  That issue is not presented here, and may depend on the particular circumstances, such as the risk of similar litigation.  It suffices here to conclude that opinion work product is protected from disclosure under exemption (d) prior to and through the pendency of the litigation.

purely factual section of the report might fall outside exemption (d) but a discussion or analysis section interwoven with facts would be protected from disclosure.[17]

Under this analysis, exemption (d) would permit a litigant to obtain more documents through a public records request, at least with respect to fact work product, than would be subject to discovery under rule 26. See Suffolk Constr. Co., 449 Mass. at 455. See also Judicial Watch, Inc. v. Department of Justice, 432 F.3d 366, 372 (D.C. Cir. 2005) ("the [deliberative process] privilege and the [attorney work product] doctrine are not coterminous in their sweep"). We do not believe that this result is so inconsistent with the administration of justice that we should imply an exemption for work product under the act conterminous with the sweep of Mass. R. Civ. P. 26 (b) (3), and depart from our refusal to do so in General Electric. Where opinion work product and some fact work product are already protected under exemption (d), where fact work product receives

_____

[17] Cf. Judicial Watch, Inc. v. Department of Justice, 432 F.3d 366, 372 (D.C. Cir. 2005), quoting In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997) ("Factual material is not protected under the deliberative process privilege unless it is 'inextricably intertwined' with the deliberative material"); Mapother v. Department of Justice, 3 F.3d 1533, 1537-1538 (D.C. Cir. 1993), quoting Wolfe v. Department of Health & Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1988) ("Where an agency claims that disclosing factual material will reveal its deliberative processes, 'we must examine the information requested in light of the policies and goals that underlie the deliberative process privilege'").

only qualified protection under rule 26 (b) (3), and where the Legislature specifically excluded from the scope of exemption (d) "reasonably completed factual studies or reports," the disclosure of fact work product that falls outside the scope of exemption (d) does not so interfere with the inherent power of the judiciary to ensure the fair disposition of cases that we must imply such an exemption. Cf. Fremont Inv. & Loan, 459 Mass. at 213-214. Nor does it so interfere with the fair administration of justice that we can reasonably infer that the Legislature did not intend to require such disclosure. Cf. Suffolk Constr. Co., 449 Mass. at 457-461.

Finally, we conclude that the administration of justice is better served by requiring a public agency to disclose in discovery any requested fact work product that would be disclosed pursuant to a public records act request -- even if it would otherwise be protected under rule 26 (b) (3) were it not a public record -- rather than requiring the litigant to make a public records act request for these same documents. See Babets v. Secretary of the Executive Office of Human Servs., 403 Mass. 230, 237 n.8 (1988), citing Bougas v. Chief of Police of Lexington, 371 Mass. 59, 64 (1976) ("It arguably would be anomalous if access to [public records], intended to be available even to the merely 'idly curious,' should be denied to those who, like the plaintiffs here, have a specific and

demonstrable need for them"); Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1344 (D.C. Cir. 1984) (FOIA "acts as a 'floor' when discovery of government documents is sought in the course of civil litigation," such that "information available under the FOIA is likely to be available through discovery"). We recognize that this might require the judge in the underlying litigation to determine the scope of exemption (d) in resolving a discovery dispute, but a judge might have been asked to make the same determination if a litigant who made a public records act request appealed the denial of that request by a custodian of public records under G. L. c. 66, § 10 (b). The difference is that it would likely take far longer to resolve the appeal of the public records request denial than it would to resolve a discovery dispute, and the appeal might not be decided before the underlying litigation is concluded. Where work product is protected from disclosure under the act by exemption (d), it must be treated like any other work product under rule 26 (b) (3), and would be subject to disclosure only upon the showing of need set forth in that rule.

In the case on appeal, the judge concluded that the documents at issue "clearly constitute attorney work product" under rule 26 (b) (3), and would be "public records" unless they fit within one of the enumerated exemptions, but did not address

whether the work product is protected from disclosure by exemption (d). We conclude that the judge erred in failing to consider whether the documents at issue are protected from disclosure by exemption (d).

We also consider the third-party defendants' argument that the documents could not be protected by exemption (d) because reports, letters, or memoranda written by an outside consultant to the city cannot be "inter-agency or intra-agency memoranda or letters" as required by exemption (d). Where a memorandum or letter received by the government was prepared at the government's request by a consultant hired by the government to assist it in the performance of its own functions, it is both "textually possible" and "in accord with the purpose" of exemption (d) to regard the document as an "intra-agency" memorandum or letter. Klamath, 532 U.S. at 9-10, quoting Department of Justice v. Julian, 486 U.S. 1, 18 n.1 (1988) (Scalia, J., dissenting) (interpreting language in exemption [5] of FOIA). There is no reason to require the disclosure of such documents simply because they were prepared by an outside consultant temporarily hired by the government rather than by a public employee. See Soucie v. David, 448 F.2d 1067, 1077-1078 & n.44 (D.C. Cir. 1971) (report prepared for government by consultant was not necessarily outside scope of FOIA exemption for "inter-agency or intra-agency memorand[a] or letters,"

because "[t]he [g]overnment may have a special need for the opinions and recommendations of temporary consultants, and those individuals should be able to give their judgments freely without fear of publicity"); Xerox Corp. v. Webster, 65 N.Y.2d 131, 133 (1985) ("It would make little sense to protect the deliberative process when . . . reports are prepared by agency employees yet deny this protection when reports are prepared for the same purpose by outside consultants retained by agencies"). Accordingly, we conclude that the work product in this case is not outside the scope of exemption (d)'s protection of "inter-agency or intra-agency memoranda or letters" simply because Smyth was an outside consultant.

The practical consequence of our holding today, stated simply, is that opinion work product that was prepared in anticipation of litigation or for trial by or for a party or party representative is protected from discovery to the extent provided under Mass. R. Civ. P. 26 (b) (3), even where the opinion work product has been made or received by a State or local government employee. So is fact work product that is prepared in anticipation of litigation or for trial where it is not a reasonably completed study or report, or, if it is reasonably completed, is interwoven with opinions or analysis leading to opinions. Other fact work product that has been made or received by a State or local government employee must be

disclosed in discovery, even if it would be protected from discovery under rule 26 (b) (3) were it not a public record.

2.  Derivative attorney-client privilege.  We also consider the city's argument that, regardless whether the documents are protected from disclosure by exemption (d), they are protected from disclosure under the derivative attorney-client privilege because Smyth "translated" for the city solicitor "technical information contained in laboratory data and field observations" relating to the site, and such assistance was necessary for the city solicitor to provide legal advice to the city.  Generally, the attorney-client privilege protects only "confidential communications between a client and its attorney undertaken for the purpose of obtaining legal advice."  Suffolk Constr. Co., 449 Mass. at 448.  See Comcast, 453 Mass. at 303 (indorsing Wigmore's "classic formulation" of attorney-client privilege).  However, we have recognized that the derivative attorney-client privilege "can shield communications of a third party employed to facilitate communication between the attorney and client and thereby assist the attorney in rendering legal advice to the client."  Id. at 306, citing United States v. Kovel, 296 F.2d 918, 921-922 (2d Cir. 1961).

The derivative attorney-client privilege is sharply limited in scope.  It attaches "only when the [third party's] role is to clarify or facilitate communications between attorney and

client," Comcast, 453 Mass. at 308, as where "the [third party] functions as a 'translator' between the client and the attorney," In re G-I Holdings Inc., 218 F.R.D. 428, 434 (D.N.J. 2003), and is therefore "nearly indispensable or serve[s] some specialized purpose in facilitating the attorney-client communications." Comcast, supra at 307, quoting Cavallaro v. United States, 284 F.3d 236, 249 (1st Cir. 2002). The privilege does not apply simply because "an attorney's ability to represent a client is improved, even substantially, by the assistance" of an expert. Comcast, supra. In short, the derivative attorney-client privilege protects otherwise privileged communications between an attorney and client despite the presence of a third party where, without the assistance of the third party, what the client says would be "Greek" to the attorney, either because the client is actually speaking in Greek or because the information provided by the client is so technical in nature that it might as well be spoken in Greek if there were not an expert to interpret it for the attorney. See id. at 306 (derivative privilege is exception to rule that "[d]isclosing attorney-client communications to a third party . . . undermines the privilege").

The communications at issue fail to meet this test. Even if Smyth's analysis were critical to the city solicitor's ability to effectively represent the city because the technical

data would otherwise have been difficult to understand, Smyth was "translating" public record technical data relating to the site, not confidential communications from the client. The purpose of the derivative attorney-client privilege is to maintain the privilege for communications between the attorney and the client in circumstances where a third party's presence would otherwise constitute a waiver of the privilege, and that purpose would not be fulfilled by shielding Smyth's analysis of technical data from disclosure. See Comcast, 453 Mass. at 307-310, and cases cited (reviewing Federal cases rejecting claim that similar communications from outside experts retained by client's attorney are within derivative attorney-client privilege). Consequently, if the TRC work product is to be shielded from disclosure, that shield must rest on the work product doctrine, not the derivative attorney-client privilege.[18]

Conclusion. For the reasons stated above, we vacate the judge's order allowing the third-party defendants' motion to compel production of the work product at issue in this case, and remand the matter to the motion judge so that he may determine

---

[18] Because we conclude that the TRC work product is not privileged, we need not address the third-party defendants' additional claim that the city waived its right to assert the privilege by failing to take reasonable steps to maintain the confidentiality of the TRC work product after it had been inadvertently produced by TRC in February, 2013, in response to a keeper of records subpoena served on TRC by third-party defendants.

whether the work product, in whole or in part, is protected from disclosure under the act because it is exempted from the definition of "public records," under G. L. c. 4, § 7, Twenty-sixth (d). Any work product that is a "public record" because it does not fall within exemption (d) (or any other exemption) shall be ordered to be produced in discovery by the city. If any work product is not a "public record" because it falls within exemption (d) (or any another exemption), the work product may not be ordered to be produced in discovery unless the third-party defendants have made the required showing of need to justify disclosure of this work product under Mass. R. Civ. P. 26 (b) (3).

So ordered.
